36 302
38 396
36 302
r165a 91
36 302
s63 364

36 302
s 65 475
36 302
38 Mis¹460

WILLIAM HUGHES, as Trustee of MAUD A. CUMING, Respondent, *v.* MARI A. CUMING, Appellant.

*Husband and wife — agreement for a separation — when it is not executory — right of the trustee to receive payments — effect of his indemnifying the husband against his wife's debts — removal of the trustee in proceedings instituted by petition — right of the husband to attack the appointment of a substituted trustee — renewal of intercourse — alimony — pleading payment — amendment of the answer.*

An agreement executed by a husband and wife which provides that the parties "hereby do consent and agree to live separate and apart from each other during their natural life," and that it shall be "lawful for her, his said wife, at all times hereafter to live separate and apart from him," is not, when considered in connection with the fact that the husband and wife had separated prior to the execution of the agreement, objectionable as being executory in its nature and providing for a future separation.

Where such an agreement nominates a third party as trustee for the wife and provides that the husband "shall and will well and truly pay, or cause to be paid, for and towards the better support and maintenance of his said wife the following sums," and also contains a covenant on the part of the trustee to indemnify the husband against all debts of the wife contracted or thereafter to be contracted, it is, although containing no provision in terms for payment to the trustee, to be construed as directing that the payments are to be made to the trustee — at all events if, and when, the trustee so requires; the fact that the husband actually made payments directly to the wife, with the consent of the trustee, does not deprive the trustee of the right to receive subsequent payments.

Where the Supreme Court, upon the petition of a wife and upon notice to the husband, removes the original trustee appointed under the articles of separation and substitutes and appoints a new trustee without objection by the husband to the jurisdiction of the court or to the regularity of the proceeding, the husband is not in a position to attack the appointment of the substituted trustee in an action brought by the latter to enforce payment of the allowances granted by the trust agreement.

*Semble*, that such an agreement creates a trust in personal property, and that a court of equity might, by virtue of its general jurisdiction over trusts, remove the original trustee and appoint another by a final order in a special proceeding instituted by petition, as well as by a decree in an equitable action;

That the undertaking on the part of the trustee to indemnify the husband did not affect the character of the instrument as creating a trust, nor deprive the court of the power to remove the original trustee and appoint another who should be of equal ability with the original trustee to perform the undertaking.

The fact that the husband, after the execution of the agreement, during a period of two months, called to see his wife frequently at the house in which she then resided and had sexual intercourse with her fifteen or twenty times during that

period, did not operate as a rescission of the articles of separation, where it appears that there was no pretense of reconciliation; that the parties never resumed living together in one dwelling place as husband and wife; that neither party intended such intercourse as they had to affect the separation agreement, and that the husband continued to make payments under such agreement for a long time after such intercourse had terminated.

An order for alimony obtained in a suit for divorce by the wife against her husband does not operate as a waiver of the separation agreement.

Where the action brought by the trustee is to recover moneys which became due under the separation agreement during the years 1896 and 1897, and no plea of payment is alleged in the answer, evidence offered by the husband to the effect that he had largely overpaid the wife in the years prior to 1896, so that nothing remained due to her, is properly excluded.

The husband's application, made in the middle of the trial, to amend his answer by inserting an allegation of payment, is properly denied, his remedy being by a motion at Special Term.

APPEAL by the defendant, Mari A. Cuming, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 24th day of June, 1898, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the 24th day of June, 1898, denying the defendant's motion for a new trial made upon the minutes.

*Alfred B. Cruikshank*, for the appellant.

*Louis H. Vorhaus* [*Moses H. Grossman* with him on the brief], for the respondent.

WILLARD BARTLETT, J.:

· The plaintiff brought this action as a substituted trustee of the wife, under a separation agreement between her and her husband, the defendant, to recover a balance which he claimed to be due by virtue of the terms of such agreement. After the evidence was all in on both sides, the jury, under the direction of the court, found a verdict in favor of the plaintiff for the full amount demanded, with the addition of interest.

The principal questions which arise upon this appeal relate to the validity and construction of the separation agreement, the legal status of the plaintiff and his right to maintain the suit as the successor of the trustee originally named in the agreement, and the

alleged rescission of the agreement by the subsequent cohabitation of the husband and wife.

It appears that Mr. and Mrs. Cuming were married in 1877, and that they entered into the articles of separation in question on or about December 22, 1887. The parties to that agreement were Mari A. Cuming, of the first part, Maud A. Cuming, his wife, of the second part, and Mary L. Chamberlain, as trustee of the said Maud A. Cuming, of the third part. After reciting that divers disputes and unhappy differences had arisen between the husband and wife, for which reason they had consented and thereby did consent and agree to live separate and apart from each other during their natural lives, the agreement provided that it should be lawful for the wife thereafter to live separate and apart from her husband, and that he would not molest her, or, without her consent, visit her, or claim or demand any of her property, and, further, that he would "well and truly pay, or cause to be paid, for and towards the better support and maintenance of his said wife," a certain weekly allowance and other sums in the contract specified. On the other hand, Mary L. Chamberlain, the trustee, covenanted and agreed with the husband to indemnify him against all debts of the wife contracted or thereafter to be contracted by her and on her account, and the contract expressly provided that if the husband should be compelled to pay any such debt or debts, the trustee would repay the same to the husband on demand.

Referring to the rule that an agreement for a future separation between a husband and wife is not enforcible, because opposed to good morals and public policy, the learned counsel for the appellant argues that the language of this agreement shows it to be executory in its character, and, therefore, brings it within the condemnation of the law. Thus, the agreement provides that the parties "hereby do consent and agree to live separate and apart from each other during their natural life;" and, in another place, that it shall be "lawful for her, his said wife, at all times hereafter, to live separate and apart from him." But the contract is to be viewed in the light of the admitted allegation of the complaint, that the defendant and his wife had separated prior to the making and execution of said articles of separation. An agreement of this character, made under such circumstances, through the intervention of a

trustee, is an effective contract on the part of the husband to pay the amounts specified therein for the support of his wife. (*Galusha* v. *Galusha*, 116 N. Y. 635, and cases there cited; *Duryea* v. *Bliven*, 122 id. 567.)

As to the construction of the agreement, it is true that it does not provide in terms for any payment to the trustee, the engagement being that " the said party of the first part shall and will well and truly pay, or cause to be paid, for and towards the better support and maintenance of his said wife the following sums." We think the fair import of this language, occurring in such a contract, is that the payments are to be made to the trustee — at all events, if and when the trustee so requires. The fact that the husband actually made the payments directly to the wife, with the assent of the trustee does not change the character of the contract in this respect. There can be no doubt that the trustee's undertaking to indemnify the husband and hold him harmless against any debts of his wife was based upon the understanding that the trustee was to have control, if need be, of the money which the husband contributed for the wife's support, in order that the trustee might protect herself by seeing that such money was really applied to the maintenance of the wife, and not otherwise used.

In 1891, upon a petition presented by Mrs. Cuming and upon notice to her husband, the Supreme Court in Kings county made an order removing Mary L. Chamberlain from her position as trustee under the articles of separation of December 22, 1887, and appointed William Hughes, the plaintiff in this action, to act as trustee in her place and stead, upon giving security in the sum of $250. This security was given in the form of a bond to the People of the State of New York, the condition of which obligation was that it should be void if the obligor should well and faithfully execute the trust created by the separation agreement. It is conceded that if an action had been brought for the purpose of removing the original trustee and appointing a new one, and a court of equity had made a decree in such a suit providing for the appointment of a new trustee, such a judgment might have been effectual for the purpose; but the appellant insists that there is no warrant of law for accomplishing this result by a proceeding upon petition. The record of the special

proceeding by which the plaintiff was appointed contains nothing to indicate that the defendant then made any objection to the jurisdiction of the court or to the regularity of the proceeding on this ground. I do not think that he is at liberty to attack the appointment collaterally in this action. (*First National Bank* v. *National Broadway Bank*, 156 N. Y. 459, 471.) But, independently of this answer to the objection, I think the appointment of the substituted trustee could properly be made by a final order in a special proceeding instituted by petition as well as by a decree in an equitable action. In the case of a trustee of real estate, the Supreme Court is expressly empowered by statute to remove the trustee for cause on a petition presented as well as in an action brought. (Real Prop. Law, § 92 ; Laws of 1896, chap. 547.) The trust under this separation agreement is a trust of personal property ; and a court of equity, by virtue of its general jurisdiction over trusts, may not only supply a defect in the office of trustee arising from death or resignation, but may also remove a trustee of personal property for misconduct or other causes which would justify the removal of a trustee of real estate. (See *Bucklin* v. *Bucklin*, 1 Abb. Ct. App. Dec. 242, 252 ; *De Peyster* v. *Beekman*, 55 How. Pr. 90.) Although the case last cited is only a Special Term decision, it was made by a distinguished equity judge in New York city (VAN VORST, J.), who, speaking of a trust of personal property, there said : " No provision is made by statute as to who shall initiate the proceeding for the appointment of a new trustee. The court must be put in motion upon the application of some person having relation to the subject. The executors of the former trustee were, in such case, proper persons to bring the matter *by petition* before the court. The appointment, after all, must be made by the court."

But it is further argued that, in point of fact, Mary L. Chamberlain was never a trustee in the sense that a Court of Chancery had jurisdiction over her ; but was merely a party to an agreement of indemnity, in place of whom the court could not compel the husband to accept the present plaintiff or anybody else as indemnitor. If this view be correct, an agreement made by a husband to provide, through the intervention of a trustee, for the maintenance of his wife, from whom he has separated, would always be terminated by the death of the trustee named in the agreement, and could also

be rendered ineffectual by the refusal of the trustee to continue to act. In either event such a contract would be of very little value to the wife. In my opinion, the undertaking to indemnify the husband, on the part of the trustee, does not make the instrument any the less a trust agreement relating to personal property; and if such is its character, a court of equity is authorized to enforce a proper administration of the trust. If in doing this it becomes necessary to remove the original trustee and appoint another, the court will see to it that the new trustee who assumes the obligation of indemnitor is of equal ability with the original trustee to indemnify the husband against liability for the wife's debt. This was done in the present case by requiring the substituted trustee to give the bond which has been mentioned. No doubt a larger bond would have been required if the husband had shown that the amount of this one was insufficient to afford him adequate security.

The argument that the articles of separation were rescinded by the subsequent cohabitation of the husband and wife rests on the testimony of the husband to the effect that for a couple of months in 1892 he called to see Mrs. Cuming frequently at the house in which she then resided, and had sexual intercourse with her fifteen or twenty times during that period. Mrs. Cuming denied this statement, but as a verdict was directed against the plaintiff it must be taken as true for the purposes of this appeal. The question is, therefore, directly presented whether these acts of intercourse amount to such a resumption of the marital relation as to destroy the agreement of separation. Mr. Bishop states the rule to be that a renewal of cohabitation commonly terminates the agreement, since the usual consideration for it has ceased to operate. (1 Bish. Mar., Div. & Sep. § 1283.) "Articles of separation between husband and wife, in which another joins with her as trustee," said BRADLEY, J., in *Zimmer* v. *Settle* (124 N. Y. 37), "although valid when made, are rendered void by resumption by them of their conjugal relation." In *Carson* v. *Murray* (3 Paige, 493, 501) Chancellor WALWORTH, after declaring that agreements for separation could not be supported, either at law or in equity, unless the separation had already taken place, or was to take place immediately upon the execution of the agreement, went on to say: "The contract will also be considered as rescinded if the parties afterwards

cohabit or live together as husband and wife, by mutual consent, for ever so short a time." I have not been able to find any case, however, in which the mere fact of occasional sexual intercourse between the parties to the marriage, after the separation, and unaccompanied by any resumption of their household life together, has been deemed effective to destroy the rights of the wife under the articles of separation. The "cohabitation" spoken of in the decisions as destructive of the separation agreement means something more than mere sexual intercourse. Thus, in *Wells* v. *Stout* (9 Cal. 479), a well-considered case, in which the opinion was written by Mr. Justice FIELD, an attempt was made to show that the deed of separation had been invalidated by the subsequent reconciliation and cohabitation of the husband and wife. The argument of the appellant was that the wife had given birth to a child in 1852, and that, inasmuch as there was no proof of her husband's absence from California at any time after the execution of the separation agreement, the law presumed access on his part to his wife; and that access being proof of reconciliation, the deed was avoided. "But assuming access to have been proved," said FIELD, J., "it does not follow that it was the consequence of such a reconciliation as would avoid the deed. *To effect this end, the reconciliation must be permanent, and be followed by cohabitation. It must be a reconciliation which restores the former relations of the parties.*"

There is no pretense of any such reconciliation in the case at bar. The parties never resumed living together, in one dwelling place, as husband and wife. Nor could either of them have intended to affect the separation agreement by such intercourse as they had, for the husband continued to make payments under the contract for a long time thereafter. The learned trial judge was, therefore, right in refusing to allow the case to go to the jury on the question whether the parties, by cohabiting together, had not rescinded the agreement.

Two other points should be noticed. It is suggested that the trial court erred in excluding evidence showing that after the separation agreement was made and before the present action was brought, a suit for divorce was instituted by Mrs. Cuming against her husband, in which an order for alimony was granted. This order the appellant argues operated as a waiver of the separation agreement, but I

find nothing to support this proposition in the case which he cites to sustain it. (*Galusha* v. *Galusha, supra.*) That case does hold that where the wife, by the intervention of a trustee, makes a valid agreement that the settlement be sufficient to support her, and indemnifies the husband against any other or further payment for her maintenance, the court should not make any further allowance in the divorce suit while the separation agreement is in force. The rule thus laid down might require us to hold that the order for alimony was erroneous, but it does not avoid the articles of separation.

The moneys for which the plaintiff sued were alleged to have become due in the years 1896 and 1897. There was no plea of payment in the answer. On the trial the court excluded evidence offered by the defendant to show that he had largely overpaid his wife in the years prior to 1896, so that nothing now remained due to her. Under the pleadings this ruling was correct. Payment is an affirmative defense, and if the defendant desired to avail himself of that plea he should have set it up in his answer. His application, in the midst of the trial, to amend by inserting a plea of payment was properly refused. A motion to amend an answer by introducing a new defense should be made at Special Term.

Judgment and order affirmed, with costs.

All concurred.

Judgment and order affirmed, with costs.