(156 App. Div 644.)

HAMMERSTEIN v. EQUITABLE TRUST CO.

(Supreme Court, Appellate Division, First Department. May 16, 1913.)

1. CONTRACTS (§ 111*)—LEGALITY—ALIMONY.

An agreement between a husband and wife, long after separation and during the pendency of the wife's action for divorce, providing that in case the divorce should be granted the wife should take certain funds in lieu of alimony, is not against public policy.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 515–520; Dec. Dig. § 111.*]

2. TRUSTS (§ 1*)—ESSENTIALS.

The essentials to a valid trust of personal property are a designated beneficiary, a designated trustee other than the beneficiary, a designated fund, and the actual delivery of the fund or property to the trustee with the intention of passing legal title thereto to him as trustee; therefore an agreement, whereby a husband delivered property to a trustee to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

.secure his performance of an agreement to pay his wife and her daughters certain sums in lieu of alimony, created a valid trust.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 1; Dec. Dig. § 1.* For other definitions, see Words and Phrases, vol. 8, pp. 7119–7124.]

‾3. TRUSTS (§§ 17, 18, 21, 25*)—PERSONAL PROPERTY—CREATION.

‾Trusts in personalty may be created by deed, will, or parol; no particular language being necessary.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 15–24, 29, 30, 34–37; Dec. Dig. §§ 17, 18, 21, 25.*]

4. TRUSTS (§ 11*)—PERSONALTY—VALIDITY.

Trusts of personalty for third persons may be created for any lawful purpose.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 9; Dec. Dig. § 11.*]

5. TRUSTS (§ 59*)—EXECUTED TRUST—REVOCATION.

Under Personal Property Law (Consol. Laws 1909, c. 41) § 23, providing that the creator of a trust may upon the written consent of all the parties beneficially interested revoke the same, the creator of a trust· in favor of his daughters, which has already been executed by conveying the trust funds to a trustee, cannot revoke it because it was voluntary and without a valuable consideration.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 78–81; Dec. Dig. § 59.*]

·6. CORPORATIONS (§ 198*)—TRUSTS (§§ 13, 59*)—VOTING TRUST—CONSIDERATION—REVOCABILITY.

Where a husband deposited corporate stock with a trustee to secure the performance of an agreement to pay his wife and daughters certain sums in lieu of alimony, the trustee to·have the right to sell the stock whenever the payments were in arrear, the validity of the trust was not affected because the settlor reserved the income of the stock and the right to vote it and the trust was voluntary as to the daughters.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 767–776; Dec. Dig. § 198;* Trusts, Cent. Dig. §§ 11, 78–81; Dec. Dig. §§ 13, 59.*]

‾7. PERPETUITIES (§ 7*)—SUSPENSION OF POWER OF ALIENATION.

Where a husband delivered corporate stock to a trustee to secure his performance of an agreement providing for the payment of certain sums to· his wife and daughters for life, in lieu of alimony, and the trustee having the right to sell the stock whenever the payments were in arrears, and the husband the right to retake it upon the delivery of certain sums to the trustee, the trust was not invalid under Personal Property Law (Consol. Laws 1909, c. 41) § 11, providing that the absolute ownership of personal property shall not be suspended by any limitation for a longer period than during the continuance of two lives in ‾being, for the absolute power of alienation was not suspended; there being numerous contingencies upon which the property might be disposed of.

[Ed. Note.—For other cases, see Perpetuities, ·Cent. Dig. §§ 48, 54, 55; Dec; Dig. § 7.*]

‾8. DIVORCE (§ 172*)—DECREE—CONCLUSIVENESS—MATTERS CONCLUDED.

· A· judgment in favor of a wife for absolute divorce, reciting that no provision as to· alimony was inserted, but that if the defendant failed to comply with his agreement further application might be made· to the court, in no way· adjudicated the validity of the agreement, which provided for payment of income to the children of the marriage.

[Ed.· Note.—For other cases, see Divorce, Cent. Dig.·§§ 559–561; Dec. Dig. § 172.*]

Scott, J., dissenting.

Appeal from Special Term, New York County.

Action by Oscar Hammerstein against the Equitable Trust Com-·pany. From an order overruling demurrers to the answer, plaintiff .appeals. Modified and affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-LIN, CLARKE, and SCOTT, JJ.

Hoadley, Lauterbach & Johnson, of New York City (Edward Lau-·terbach, of New York City, of counsel, and Charles L. Craig, of New York City, on the brief), for appellant.

Murray, Prentice & Howland, of New York City (Edward W. Hatch, of New York City, of counsel, and Frank B. Church, of New York City, on the brief), for respondent.

CLARKE, J. The complaint alleges that the defendant has become possessed of and now holds certificates for 3,998 shares of stock of the Hammerstein Amusement Company which the plaintiff owns; that he has demanded possession thereof and been refused, and asks judgment for the possession thereof, or for $100,000 damages.

The first defense sets up that the plaintiff and Malvina Hammer-:stein intermarried about the 7th of December, 1879, and had two children, Rose Hammerstein Tostevin and Stella Viola Hammerstein; ·that about the 26th of January, 1910, when plaintiff and his said wife were then living separate and apart, they entered into an agreement to live separate and apart, under the terms whereof plaintiff was to pay his wife $200 a week. That agreement is attached to the answer, and it provides, inter alia:

"And it is further agreed that in case an action for an absolute divorce ·between the parties hereto is hereafter commenced by the party of the second part, all the terms and conditions of this agreement shall be deemed to have been annulled and abrogated and to be no longer binding upon the parties hereto."

It is further alleged that on the 17th of November, 1910, Malvina Hammerstein commenced an action in the Supreme Court, Rockland ·county, against the plaintiff for absolute divorce, and that during the pendency of said action on May 3, 1911, the parties thereto and their .attorneys at the request of the defendant in that action entered into a ·certain stipulation attached to the answer. By said stipulation it was agreed:

"That in the·event final judgment shall be recovered by the plaintiff against the defendant in said action, the following agreement shall become of force and effect and shall stand in lieu of all alimony or provision for the support of the plaintiff and said children of the parties hereto."

The parties signing were the plaintiff and defendant and their re-·spective attorneys, and also the Trust Company of America, subsequently merged in the defendant herein, and it provided that the former agreement alluded to "is hereby terminated, abrogated and ended"; that "the party of the first part for himself, his heirs, executors and administrators promises and agrees to pay to" the Trust ·Company $200 weekly for the use of his wife during the term of her ,natural life; also to pay to said Trust Company from and after the

death of his wife the weekly sum of $100 for the use of Rose Hammerstein Tostevin and the further weekly sum of $100 for the use of Stella Viola Hammerstein, their daughters, during their natural lives, respectively; and in the event of the death of the party of the first part before the termination of any of the payments hereinbefore agreed to be made, he covenants that such payments remaining to be made shall constitute a first charge upon his estate and that the assignment hereinafter provided for shall continue after his death in full force and effect, according to the terms thereof, as security for the making of such remainder payments. He agreed to pay $250 a year to the Trust Company for its services; and, in order to secure the payments hereinbefore mentioned, the said party of the first part covenanted and agreed as follows: He "assigns, transfers and delivers" to the Trust Company the shares sued for here, said shares having a par value of $25 each and for the purposes of this indenture an aggregate market value of $100,000, "to have and to hold unto the said party of the third part and its successors, absolutely and forever, in trust, nevertheless, and for the use and purposes as follows, that is to say: That said shares of stock shall be held by said party of the third part as security for the faithful performance by the party of the first part of the covenants herein contained on his part to be performed," and if he shall make default it shall be lawful for the Trust Company, in its discretion, to sell such shares of stock at public or private sale without notice to him. The net proceeds arising from such sale shall be applied first to the payment of any installments then in default; if the balance be sufficiently large to be susceptible of advantageous investment, it shall be invested by the party of the third part and the income as it accrues applied to the payments provided to be made, any deficiency being made up from the principal. If after the termination of the trust in said fund any part thereof shall remain, it shall be repaid or turned over to the party of the first part, or his personal representatives. No such sale shall release the party of the first part from liability to make good any deficiency in payments hereinabove provided to be made, which such income shall not suffice to pay. And he further covenants and agrees that if the shares depreciate he will supply additional security to cover the loss or deficiency between the value of said shares at the date of these presents and their value at any subsequent time. The Trust Company covenants that at the termination of the trusts hereby created it will reassign and redeliver said shares to the party of the first part. And the party of the first part also covenants and agrees that as a further provision for the said wife and daughters, he will convey a certain parcel of land in Kings county, with the buildings thereon, to Rose H. Tostevin and Stella V. Hammerstein, in trust, however, to pay the rents, issues, and profits thereof to Malvina Hammerstein during her life, and thereafter to have and to hold the same for their own sole use, benefit, and behoof, in fee simple absolute as tenants in common share and share alike, with absolute power of sale during the continuance of the trust. It is, however, understood that all payments herein provided to be made by the party of the first part to the party of the third part shall

cease upon compliance by the party of the first part with the following conditions: (1) That he shall deposit with the Trust Company $175,-000 in money in trust to invest and reinvest the same and to pay over the income thereof to his wife during her natural life, and upon her death the said sum, or transfer and convey and deliver securities in which the same may have been invested, in equal shares to said Stella and Rose, whereupon such trust shall cease; and (2) that he shall pay off and discharge the $7,000 mortgage on the Brooklyn house hereinbefore mentioned. In consideration of defendant's having stipulated and agreed as aforesaid, it was stipulated that plaintiff would not make any application and shall not receive any allowance for counsel fee or alimony pendente lite.

The answer proceeds to allege that said stipulation was submitted to the referee in the divorce action and introduced in evidence, and that the referee rendered a report recommending a decree of absolute divorce, which was confirmed upon submission of all the papers to Mr. Justice Tompkins, and that no specific award of alimony was given. The report of the referee contained the clause:

"Satisfactory provision having been made by the defendant for the support and maintenance of the plaintiff, no finding in that respect is submitted."

And the decree of the court provided:

"And it is further ordered that, the defendant having made suitable provision for the support of plaintiff, no specific provision is herein made therefor, but leave is hereby granted said plaintiff at any time hereafter, on defendant's failure to comply with his provision, to apply to this court for suitable alimony."

It is alleged that the plaintiff herein delivered the shares sued for to the Trust Company to be held for the purpose and in the manner set forth in said stipulation, and that they are now being held by the defendant pursuant to the terms of the agreement set forth and for the purposes thereof, and that plaintiff conveyed the real property referred to in said stipulation to his daughters, and that he paid to the defendant the $200 weekly for the support of his said wife until her death, which occurred on or about January 9, 1912, and thereafter continued to pay the said sum of $200 weekly for the use of his daughters as provided, down to and including the week ending October 12, 1912. For a second defense the answer repeats the allegations of the fourth, sixth, seventh, eighth, ninth, tenth, eleventh, and twelfth paragraphs, and alleges that by said judgment so recovered in favor of Malvina Hammerstein against this plaintiff the matters herein in litigation were finally adjudicated and settled; and that the matters herein in litigation by reason of said judgment have become, and now are, res adjudicata, and the plaintiff is thereby estopped and barred from maintaining this action.

To the first and second defenses the plaintiff demurred upon the ground that they are insufficient in law upon the face thereof.

[1] So far as the first defense is concerned, I am of the opinion that there was a valid trust created upon good consideration, which

cannot be destroyed by the settlor alone; and therefore the action in replevin must fail. The trust deed or agreement was entirely valid when executed; it was made long subsequent to the commencement of the divorce action, and it took the place of a prior lawful agreement to live separate and apart which had been made when the parties were already living separate and apart; and it was to take effect only in case the plaintiff should succeed in obtaining a final judgment severing the bonds of matrimony. Not only that, but it was submitted to the referee and to the court, and by the court accepted and acted upon. It relieved the court of the necessity of taking testimony as to alimony and making a specific finding in relation thereto. In matrimonial actions, brought in good faith, the parties may relieve the court by agreement, contingent upon the result, of the duty of fixing an amount of alimony. Such an agreement, openly made and submitted to the court, is not against the policy of the law, but is in conformity with the general rule which favors ending litigation by agreement where possible. Of course, an agreement based upon promise or understanding to institute an action to dissolve the marriage would be against public policy; as is an agreement to separate made while the parties still live together. But after the fact, simply as a short cut to settling one of the subsidiary issues, there can be no objection to an agreement as to alimony, so submitted. Werner v. Werner, 153 App. Div. 719, 138 N. Y. Supp. 633. There is no doubt that, so far as this agreement was a provision for alimony, it was valid.

[2] But the claim is made, as the two daughters were adults, that there was no obligation on the part of the husband to provide for their support, and, as the wife has died, there was no consideration which, as to them, now supports the instrument.

In my opinion the stipulation created a valid, irrevocable trust in favor of the two daughters and a special property in the certificates of stock in the defendant as trustees.

"There are four essential elements of a valid trust of personal property: (1) A designated beneficiary; (2) a designated trustee, who must not be the beneficiary; (3) a fund or other property sufficiently designated or identified to enable title thereto to pass to the trustee; and (4) the actual delivery of the fund or other property, or of a legal assignment thereof to the trustee, with the intention of passing legal title thereto to him as trustee." Brown v. Spohr, 180 N. Y. 201, 209, 73 N. E. 14, 16.

All of these essential elements exist in the instrument in question. The certificates of stock are expressly assigned to the trustee, and it appears from the answer that after the making of the stipulation and in performance thereof the plaintiff delivered to the Trust Company 3,998 shares of the capital stock of the Hammerstein Amusement Company to be held by the said Trust Company for the purpose and in the manner set forth in the agreement; that said certificates of stock here sued for are now being held by the defendant herein by virtue of the terms of the agreement and for the purposes thereof. It also appears that the plaintiff conveyed the real property referred to in the stipulation to his said daughters, and that he performed his agreement by the payment of $200 weekly for the support and maintenance of his wife until her death, and thereafter paid the said sum weekly for the

use of his said daughters down to and including the week ending October 12, 1912.

[3] Trusts in personalty may be created by deed, will, or parol and no particular language is necessary to constitute a trust. Matter of Carpenter, 131 N. Y. 86, 29 N. E. 1005.

[4] Trusts of personalty for third persons may be created for any lawful purpose, as the statutes do not define their purposes as they do in express trusts of real estate. Gilman v. Reddington, 24 N. Y. 9, 12; Hirsh et al. v. Auer, 146 N. Y. 13, 19, 40 N. E. 397. A trust covering personal property only may embrace "any purpose not unlawful, subject only to the law of perpetuity." Matter of Wilkin, 183 N. Y. 104, 75 N. E. 1105.

In Robb v. Washington & Jefferson College, 103 App. Div. 327, 93 N. Y. Supp. 92, Mr. Justice Laughlin, citing numerous cases, said:

> "As in the case of wills, so in the construction of declarations of trusts, the intention of the settlor, if not violative of any statute or rule of law, is controlling and must be given effect; and it is to be gathered from a consideration, not of the precatory words alone, but of all the provisions of the instrument in the light of any circumstances shown that have a bearing thereon."

[5, 6] Testing the instrument at bar, the settlor "promises and agrees to pay to the party of the third part the sum of $200 per week *for the use* of the party of the second part," etc., "and after the death of the latter *for the use* of the daughters." It uses the words "so long as the said *trust* shall remain in force," and "the party of the first part hereby *declares,* covenants and agrees" the assignment of the certificates is to the party of the third part "absolutely and forever, *in trust,* nevertheless, and for *certain uses* and purposes." Further indication is shown of the settlor's intention in the provision that the trustee agrees that at the *termination of the trust* hereby created it will reassign. The settlor further agrees to transfer the Brooklyn property to his daughters, *in trust,* however, to pay the rents, issues, and profits thereof to Malvina Hammerstein during the term of her natural life, and thereafter to have and to hold the same to themselves. And further, if the settlor should exercise the right to *terminate the trust* by the payment of $175,000 in cash to the trustee, the latter is to receive the said sum *in trust,* to invest and reinvest the same in securities *in which trustees are authorized* by the laws of the state of New York to invest and to pay over the income to the party of the second part during her natural life in quarterly payments, and upon her death to pay the said sum of $175,000 or transfer and convey and deliver securities in which the same may have been invested in equal shares to the said Stella and Rose, *whereupon said trust shall cease.*

In Roe v. Vingut, 117 N. Y. 204, 22 N. E. 933, Peckham, J., after stating that the intent is to be gleaned from a perusal of the whole instrument, said:

> "Upon such perusal, if a general scheme can be found to have been intended and provided for in the instrument, and such general scheme is consistent with the rules of law, and so may be declared valid, it is the duty of courts to effectuate the main purpose."

It seems to me that the general scheme alluded to is here found clearly established. The trust is an executed trust.

"The objection that the trust here sought to be enforced was voluntary and without consideration has no weight, if it was, in fact, fully and completely constituted." Van Cott v. Prentice, 104 N. Y. 45, 10 N. E. 257.

The fact that, as to the daughters of the settlor, it was voluntary, and without other consideration than that of natural love and affection with power to terminate the trust in the *manner provided in the instrument* and the reservation of the right to the income in the stock, and the right to vote it, does not invalidate the trust. Von Hesse v. MacKaye, 136 N. Y. 114, 32 N. E. 615; Schreyer v. Schreyer, 101 App. Div. 460, 91 N. Y. Supp. 1065, affirmed 182 N. Y. 555, 75 N. E. 1134. The plaintiff as settlor cannot by his own act revoke it. That can only be done upon the written consent of all the persons beneficially interested. Personal Property Law (Consol. Laws 1909, c. 41) § 23.

[7] It is provided by the Personal Property Law, § 11, that the absolute ownership of personal property shall not be suspended by any limitation or condition for a longer period than during the continuance and until the termination of not more than two lives in being at the date of the instrument containing such limitation or condition; or, if the instrument be a last will and testament, for not more than two lives in being at the death of the testator. In other respects limitations of future or contingent interests in personal property are subject to the rules prescribed in relation to future estates in real property. The rule against perpetuities in this state is now a rule wholly directed against the suspension of the absolute ownership or power of alienation. Unlawful suspension of the absolute ownership or power of alienation of personal property exists only where there are no persons in being by whom an absolute, unqualified interest in possession can be conveyed. The mere creation of a trust does not ipso facto suspend the power of sale.

The absolute ownership and power of alienation is not suspended in this case because there were at all times persons in being who could convey an absolute title in possession; (1) the settlor himself, with the written consent of the beneficiaries; (2) the settlor himself, if he avails himself of the right to change the trust property to a cash fund of $175,000; (3) the annuitants acting in conjunction with the trustee and settlor could convey the estate to the settlor who is the remainderman; (4) the settlor, the beneficiaries, and the trustee could convey to a third person, and if the beneficiary and the settlor should unite in an assignment the trustee would be obliged to convey to the assignee; (5) the trustee alone, in the event of a sale after default in the payments provided to be made by the settlor.

In Wells v. Squires, 117 App. Div. 502, 102 N. Y. Supp. 597, affirmed on opinion below 191 N. Y. 529, 84 N. E. 1122, a will bequeathed a residuary estate in trust to pay over annuities to each of three beneficiaries named during their natural lives. Payment of annuities was not limited to payment out of the income, but payment

might be made out of the principal if necessary. It was held that there was no suspension of absolute ownership obnoxious to the statute. Mr. Justice Scott said:

"If then there are persons in being who can, unitedly, give a perfect title, there is no suspension of alienation. The plaintiff's contention is that the title cannot be transferred, because the annuitants could not lawfully transfer their interests. This contention cannot be sustained. The prohibition against the assignment by a beneficiary of the right to enforce the performance of a trust of personal property is limited to cases where the trust is one to receive the income and apply it to the use of any person. The statute expressly provides that 'the right and interest of the beneficiary of any other trust in personal property may be transferred.' Pers. Prop. Law, Laws of 1897, c. 417, § 3, as amended by chapter 87, Laws 1903. The trust in the present case is distinctly not a trust to receive the income and apply it to the use of any person, and cannot be construed as such by any known rule of construction. Consequently the interests of the beneficiaries are alienable and do not suspend the absolute ownership of the fund. Kane v. Gott, 7 Paige, 521; Id., 24 Wend. 641 [35 Am. Dec. 641]. The annuitants, acting in conjunction with the trustee, could convey the estate to the remainderman, or they, with the remainderman, could convey to a third person. And if the annuitants and the remainderman united in an assignment, the trustee would be obliged to convey to the assignee. Coster v. Lorillard, 14 Wend. 265."

So far as the first defense is concerned, I think it states facts sufficient in law, and that the demurrer thereto was properly overruled.

[3] As to the second defense, res adjudicata, I do not think that is so. What was determined in the divorce suit was that this plaintiff had been guilty of adultery and that his wife was entitled to an absolute divorce. It was also determined that as suitable provision had been made for the wife no provision in regard to alimony would be inserted in the interlocutory or final judgment, but that if the defendant failed to comply with the provisions of his agreement further application might be made to the court. I cannot see that the validity of the instrument, so far as the daughters' interests are concerned, was passed upon either directly or indirectly by that payment. Nothing was said about the daughters or their support. As they were of age, indeed one of them married, there was no legal obligation enforceable at the time, under which provisions for their support ought to have been made by the final decree. I cannot perceive in what way the question here put can be considered res adjudicata.

The order appealed from should therefore be modified by affirming so much thereof as overruled the demurrer to the first defense, and reversing so much as overrules the demurrer to the second defense and sustaining the demurrer thereto, with leave to plaintiff to withdraw his demurrer to the first defense, without costs to either party on this appeal.

INGRAHAM, P. J., and McLAUGHLIN and LAUGHLIN, JJ., concur.

SCOTT, J. (dissenting). The plaintiff sues in replevin to recover certain certificates for shares of stock in the Hammerstein Amusement Company claimed to belong to him, possession of which is withheld by defendant.

The defendant by way of a separate defense asserts that the stock came into its possession and is now held by it pursuant to a certain agreement, dated May 3, 1911, between plaintiff, his wife, Malvina Hammerstein, and the Trust Company of America, predecessors of defendant. This agreement is set forth at length in the answer. It contains a preamble reciting that said Malvina had commenced an action for divorce against plaintiff, which was then pending; that the parties had come to an agreement fixing the provisions which should be made by plaintiff as alimony and for the support of children, issue of the marriage, in the event of a final judgment of divorce against the plaintiff. Then followed the provisions referred to, which were to become of force and effect in case such a final judgment should be rendered, and should stand in lieu of all alimony or provision for plaintiff's said wife and the children of the parties. The provisions were that the plaintiff, or his personal representatives in case of his death, should pay to his wife Malvina the sum of $200 per week during the term of her natural life; "also to pay said party of the third part (the Trust Company) from and after the death of the party of the second part (Malvina Hammerstein) the weekly sum of $100 for the use of Rose Hammerstein Tostevin, and the further weekly sum of $100 for the use of Stella Viola Hammerstein, daughters of the parties of the second part, during the term of their natural lives respectively." The plaintiff also assigned to the Trust Company and its successors the shares of stock which are the subject of the present action "in trust nevertheless, and for the use and purpose as follows, that is to say; that the said shares of stock shall be held by the said party of the third part (the Trust Company) as security for the faithful performance by the party of the first part of the covenants herein contained on his part to be performed." Concerning the interest in said stock reserved by plaintiff, the agreement further provides:

"It is the intention of the parties hereto that the assignment of the shares of stock as hereinbefore made shall be only and solely for the purpose of this indenture, and that nothing herein contained shall deprive the party of the first part of any dividends or income from said shares of stock as the owner of said shares of stock or of his voting power as such owner, provided however, and the party of the first part so covenants, that he will do nothing to impair the value of said stock, except as to the mortgage to Edward F. Albee as set forth above."

Provision is made for the sale of said security in case of plaintiff's default. There are many other provisions in the agreement not affecting the questions now presented.

It is alleged that this agreement was submitted to the referee before whom the divorce action was pending, and read in evidence and spread upon the minutes and duly approved by said referee. It is also alleged that it was submitted to the court before whom the referee's report came for confirmation, and approved by it to the extent that no provision was made, in the decree of divorce, for alimony because suitable provisions had been made therefor by said agreement. The referee's report and the decree of divorce are attached to and made a part of the answer. It is alleged that Malvina Hammerstein, plain-

tiff's wife, died on or about January 9, 1912; that plaintiff paid her the stipulated amount down to the time of her death, and thereafter paid the sum of $200 weekly for the use of his daughters down to October 12, 1912, which seems to have been about the time of the commencement of this action. It appears from the referee's report made part of the answer that plaintiff's two daughters were both of full age when the agreement was made, having been born in 1881 and 1883, respectively.

A second separate defense in which the decree of divorce above referred to is pleaded as res adjudicata of every question involved in this action is also demurred to.

The case as made by the answer is briefly this: That plaintiff made an agreement with his wife and a Trust Company that he would pay to his wife, or to the Trust Company for her use, the sum of $200 per week, and that after her death he would pay to two adult daughters, or to the Trust Company for their use, the sum of $100 per week each for their respective lives, and that as security for the fulfillment of this he deposited with the Trust Company the securities now sought to be replevied. So far as the wife is concerned, the agreement has been fully executed and carried out, and the sole question remaining is whether the plaintiff is under any legal obligation to further execute and carry out the agreement for the payment of a weekly sum to, or for the use of, his daughters, who are not parties to the agreement. This is clearly not the case of the creation of a trust. There is no conveyance to a trustee of any property to be devoted to the use of the daughters, and a corresponding parting with ownership thereof by the plaintiff. There is nothing more than a promise to pay in the future, and a deposit of stock as security with a reservation to plaintiff of the beneficial interest in the stock until default. In the baldest terms there is only a promise to pay each of his daughters $100 a week for life. I am unable to see that this promise is sustained by any consideration. As has been said, the daughters were not parties to the agreement, and when it was made they were both of full age, and neither plaintiff nor his wife owed to them any duty of support. No consideration moving from the daughters is mentioned in the agreement, and, while the natural love and affection which a parent is presumed to entertain for a child will support a gift inter vivos, a deed of conveyance, or an executed trust, I do not understand that it will support a bare promise to make a gift in the future, so far as the promise remains unexecuted. Fink v. Cox, 18 Johns. 145, 9 Am. Dec. 191. I am therefore of the opinion that the agreement imposed no obligation upon plaintiff to continue to make payments to, or for the use of, his daughters; that he had the right to discontinue such payments at any time; and, having elected so to discontinue, that he had a right to retake possession of the securities pledged to insure the fulfillment of his agreement.

So far as concerns the second separate defense, it is manifest that the judgment of divorce between plaintiff and his wife determined nothing respecting plaintiff's agreement to pay to his daughters after his wife's death, and therefore is not res adjudicata of the only question involved in this action.

The order appealed from should therefore be reversed, with $10 costs and disbursements, and the demurrer to both separate defenses sustained, with $10 costs.