RUSSELL P. YATES, Plaintiff, *v.* HELEN YATES et al., Defendants.
(Actions Nos. 1 and 2.)

Supreme Court, Monroe County, November 9, 1944.

*John J. McInerney* for plaintiff.

*Charles B. Bechtold* for Helen Yates, defendant.

*J. Roger Dobson* for Karl K. Bechtold, guardian ad litem for Jane Yates and another, infant defendants in Action No. 1.

*James E. Cuff*, guardian ad litem for Jane Yates and another, infant defendants in Action No. 2.

VAN VOORHIS, J. The amended complaint in Action No. 1 asks to set aside a separation agreement between plaintiff Russell Yates and defendant Helen Yates dated January 27, 1939, together with a collateral trust agreement for $27,500, in which defendant Lincoln-Alliance Bank and Trust Company is named as trustee, made to secure the performance of the separation agreement, and likewise an earlier trust agreement for $44,000, dated November 2, 1936, also made by plaintiff for the benefit

of defendant Helen Yates and their infant children Jane Yates and James Carlton Yates.

Upon the trial the complaint was dismissed insofar as it asks to set aside the $44,000 trust agreement of November 2, 1936, by reason of the plaintiff's failure to prove facts sufficient to constitute a cause of action for that relief.

The collateral trust agreement for $27,500 of January 27, 1939, stands or falls with the separation agreement of even date therewith.

The amended complaint attacks the separation agreement upon the following grounds: (1) that defendant Helen Yates has violated her obligations thereunder, (a) by refusing to permit plaintiff to see or visit their children, the infant defend- ants Jane Yates and James Carlton Yates, (b) by annoying and molesting the plaintiff·and (c) by spending upon herself moneys paid under the separation agreement for the use of the children; (2) that said separation agreement was entered into by plaintiff in consequence of duress practiced upon him by defendant Helen Yates in that she threatened that otherwise she would take their children Jane Yates and James Carlton Yates to unknown places so that he would never see or be able to communicate with them again, and that she would have him arrested; (3) that when the separation agreement and accompanying trust agreement were signed plaintiff was under the influence of intoxicating liquor so as to be unable to compre- hent the nature thereof; and (4) that said separation agree- ment was entered into upon the express understanding that the defendant Helen Yates would obtain a divorce against the plaintiff in the State of Florida, which allegation was amended upon the trial by adding that the object of said divorce was to enable defendant Helen Yates to marry one Arthur Danihy.

A discussion of the evidence applicable to most of these grounds may be omitted. It is not found that plaintiff was under the influence of intoxicants on January 27, 1939, so as to be unable to comprehend the nature of the separation agreement and trust agreement executed upon that date, nor is it found that the said instruments were entered into by plaintiff as a result of coercion or duress. Defendant Helen Yates has not broken the agreement by refusing to permit plaintiff to see or visit their children, nor does the evidence sustain plaintiff's contention that she has neglected to spend or was required to spend for the benefit of the children any stated portion of the monthly install- ments paid to her under the separation agreement. It provides that Helen Yates shall receive $425 per month " for her sup-

port and maintenance and for the maintenance, education and support of the children of the parties hereto '' without segregating how much shall be used by the mother for herself from any amounts to be applied for the benefit of the children. It is true that the $425 payable monthly is to be reduced by $150 upon the remarriage of Helen Yates and by $137.50 upon the death or coming of age of the children respectively. That these contingencies were anticipated and provided for does not mean that without their occurrence in fact, the mother was obliged each month to allocate her $425 so that each child would obtain the equivalent of $137.50 and she herself of $150, and to render an accounting to the plaintiff accordingly. Even upon the happening of any of these contingencies, the reduced amount is still to be paid to the mother as an indivisible sum for the remaining purposes mentioned. Some of the children's necessaries might be capable of being determined separately, but it is difficult to divide and apportion the expense of operating a single housekeeping unit, nor will a duty to make specific apportionment for any purpose be implied in the absence of language requiring it in the separation agreement. The contractual obligation to pay $425 per month for mother and children should be construed like the obligation imposed by similar verbiage in a judgment in a matrimonial action. The children have no direct interest in the money paid to the mother even though it be wholly or partly for their benefit (*Kendall* v. *Kendall, No. 1,* 200 App. Div. 702). The payment belongs entirely to the mother and is given to her for her own support and to recompense her for the discharge of the duty of caring for the children. Doubtless she is obliged to provide for them in accordance with their needs and station in life within the limitations of her monthly allowance, and, if she neglects to do so, the contract may be declared broken, but she is not subject to an accounting like a trustee. According to the testimony these children have not been neglected and no breach of this part of the separation agreement has been proven. The charges of molestation and annoyance of plaintiff by defendant Helen Yates are not sustained. Although she stayed for several months in his house at Rochester, New York, with the children after the agreement had been signed and the divorce obtained, he did not object to this, and neither of them intended to resume married life. No cohabitation occurred which could have had the effect of waiving or nullifying the agreement or the divorce. Even occasional acts of sexual intercourse, which she denies occurred, would not operate as

a rescission (*Hughes* v. *Cuming*, 36 App. Div. 302). In this case the parties had separated before the agreement was signed; it was not the cause of their separation, and cannot be vacated on account of what were at most temporary and casual relations between the parties afterward.

The serious question in the lawsuit is whether the separation agreement was made as an inducement to procure a divorce, and became void as against public policy on that ground. Immediately after it was signed, the wife commenced an action for divorce in Florida in which a decree was rendered three weeks later. He appeared. This procedure had been agreed upon orally in advance of the written agreement and before her departure from Rochester, New York. He had paid to her the estimated expenses of the divorce upon the day before the separation agreement was signed, which was entered into in contemplation of divorce in the sense that both parties desired to have the marriage dissolved and intended to make financial arrangements adapted to that end, and considered the separation agreement and divorce as a single transaction. In these respects the separation agreement is claimed to run afoul of such decisions as *Schley* v. *Andrews* (225 N. Y. 110, 113), *Murthey* v. *Murthey* (287 N. Y. 740), *Gould* v. *Gould* (261 App. Div. 733), and *Train* v. *Davidson* (20 App. Div. 577). In the leading case of *Schley* v. *Andrews* invalidity was held to result where " The agreement was entered into by the plaintiff for the sole purpose of inducing the defendant to procure a divorce." Not all agreements conditioned on divorce are illegal. (*Butler* v. *Marcus*, 264 N. Y. 519; *Werner* v. *Werner*, 153 App. Div. 719, approved in *Hammerstein* v. *Equitable Trust Co.*, 156 App. Div. 644, 649, 650, affd. 209 N. Y. 429; *Hamlin* v. *Hamlin*, 224 App. Div. 168, 170, *Kunker* v. *Kunker*, 230 App. Div. 641, 643.) It is true that in *Werner* v. *Werner supra*, p. 722) the court said that " *The action for divorce being pending,* there was no legal objection to the parties entering into a stipulation fixing the amount that the defendant should pay in the discharge of this obligation [of support] ". (Italics supplied.) But an examination of the opinion as a whole discloses that this statement was not intended to be laid down as a rule of law. Under the facts of that case the pendency of a divorce action was regarded as some indication that the husband's promise to pay a stated amount after decree in lieu of alimony was not responsible for starting the action and was not the procuring cause of the divorce. This is necessarily the crucial point in ascertaining whether public policy

has been offended. In *Butler* v. *Marcus* (*supra*) the Court of Appeals upheld a separation agreement which made the continuance of payments for the support of the wife contingent on her procuring a divorce, although the agreement was signed before the action was begun. The pendency of an action is an evidential factor, of varying significance according to the circumstances of the case, which should not be confused with the basic principle that separation agreements are to be judged according to whether they contain provisions that have a tendency to bring about divorces which would not otherwise occur. "In matrimonial actions, brought in good faith, the parties may relieve the court by agreement, contingent upon the result, of the duty of fixing an amount of alimony." *Hammerstein* v. *Equitable Trust Co., supra,* p. 649.)

What test is to be applied to determine whether a separation agreement tends to promote divorce? Public policy looks with favor upon the continuance of the marriage relation, and does not encourage the procurement of divorces even where ground for divorce exists. Thus, if the financial provisions that have been agreed upon in favor of the wife are substantially in excess of what the divorce court would allow, a separation agreement may be void, as tending to promote divorce, regardless of whether there exists a legal basis on which the marriage could be dissolved. In *Moore* v. *Moore* (255 F. 497, 502) the court said: "But the promise was for something more than for support of the divorced wife during the period of the husband's life — an obligation which the laws of some states would impose upon him. He undertook to support her for her life, and to do this, he bound ' his heirs, executors, and administrators ' to continue payments for her support after his death. By this promise, the wife was shown, that if she succeeded in getting a divorce, she would receive more than the law would award her, even if the law were as she thought it. This was a substantial inducement to her to prosecute her divorce proceeding to the decree on which alone she could reap the promised reward." The New York courts have followed this principle, although sometimes without formulating it. *Gould* v. *Gould* (*supra*) involved a guarantee of support by a third party which the wife could not have obtained in court. *Schley* v. *Andrews* (*supra,*) was brought to enjoin the collection of a $35,000 judgment which the wife had entered against the husband under a confession of judgment which he had executed pursuant to a separation agreement allowing her to use the confession on condition that she obtain a divorce. It also

gave her $20,000 in life insurance in the same contingency. This was a great deal more than she could have obtained as alimony. The separation agreement in *Murthey* v. *Murthey* (*supra*) provided security for the performance of the husband's obligations which made the benefit to the wife materially greater than she could have obtained in court, and it likewise conferred a benefit upon the wife in event of her husband's death.

The separation agreement between Mr. and Mrs. Yates contained no provision rendering the estate of Mr. Yates liable for her support after his death. During the trial the court overruled the contention which was advanced in favor of the infants that they were intended to be provided for by this agreement after their father's demise. The same reasoning leads to a similar conclusion with respect to the provision for the wife. It is true that Mr. Yates did put up $27,500 in collateral security for the performance of the agreement during his lifetime, but the evidence shows him to have been a sufficiently wealthy man so that it can hardly be said that the collateral security added much to the value of the agreement. He had abundant personal financial responsibility to be able to meet the stipulated payments for support during the probable remainder of his life without the necessity of resorting to collateral security for its performance. It would be unrealistic to require that in order to satisfy public policy separation agreements must make provision for the wife in the same form as that in which the divorce court is allowed to do by statute. The question is whether the value of the contractual benefit to the wife is substantially in excess of the value of what the court would ordinarily grant under the circumstances of the case pursuant to the applicable statute of divorce. The Yates' separation agreement, in providing $425 per month for the wife and two children, did no more than would reasonably be expected of a man of his wealth and position at the time when the agreement was made. That his income later was reduced somewhat and his taxes increased does not bear upon whether the separation agreement was an inducement to the wife to obtain a divorce, which must be weighed in the light of conditions which existed at the time it was signed. In this case it was not such an inducement. Neither is the situation the same as though the $425 per month were exclusively for the benefit of the defendant Helen Yates. Even if it were necessary for Mr. Yates to dip into his principal to some extent in order to maintain and educate his children,

that would have been entirely proper. The $425 payable monthly to Mrs. Yates was to be reduced by $137.50 upon the death or coming of age of each child, except that in the case of the boy the suspension of this amount was to take effect on his becoming twenty-three years old if at twenty-one he was in college or attending a trade or professional school. After that the wife, unless remarried, was to receive but $150 per month. The circumstance is of no moment that if the divorce court had awarded alimony instead of remitting the wife to her rights under the separation agreement, the court would have retained jurisdiction to vary the amount in accordance with changes in circumstances of the parties. That does not cause the agreement to have a tendency to promote a divorce. When the separation agreement was signed in 1939, there was as much likelihood that plaintiff's securities would appreciate in value and in return as there was that they would depreciate. Other provisions therein contained, relating to an adjustment of existing property rights, are found to have been of at least as much benefit to the husband as to the wife.

A word is in order concerning the effect of the Florida divorce as *res judicata*. Since the husband appeared in the action, the decree is not subject to collateral attack and is conclusive evidence of the existence of grounds for divorce (*Glaser* v. *Glaser*, 276 N. Y. 296; *Frost* v. *Frost*, 260 App. Div. 694) which would be true also of the validity of the separation agreement if it had been incorporated in the decree (*Hess* v. *Hess*, 276 N. Y. 486; *Matter of Rhinelander*, 290 N. Y. 31, 37; *Hoyt* v. *Hoyt*, 265 App. Div. 223; *Fales* v *Fales*, 160 Misc. 799, affd. 250 App. Div. 751; *Goldberg* v. *Mayer*, 243 App. Div. 477; *Stewart* v. *Stewart*, 198 App. Div. 337; *France* v. *France*, 79 App. Div. 291; *Matter of MacGregor*, 168 Misc. 557). Since this agreement was not adopted by the Florida court, nor its validity adjudicated in that action the decree does not dispose of that question, (*McDonald* v. *McDonald*, 228 App. Div. 341; *Van Horn* v. *Van Horn*, 196 App. Div. 472, 482, 483) which is left open to be the principal issue here. In the last mentioned decision the following is stated: "The plaintiff could have consented that the agreement be merged in the decree or could have rested on her rights under it; and with respect to alimony and the support of the children, I think it was intended to continue the agreement as such without merging it in the decree, in which it is not set forth, until a further application should be made to the court."

The submission of this action was completed before the death of Mr. Yates, but the decision of it has been withheld until the appointment and substitution of a personal representative of his estate, which has just occurred. The plaintiff is now Union Trust Company of Rochester, as temporary administrator of Russell Yates, deceased. The complaints in both actions are dismissed, with costs to the defendant Helen Yates in each action. The cross claims of the infant defendants against Helen Yates are dismissed. Allowances to the special guardians will be made on application after notice to other parties who have appeared.