Samuel C. Coleman, J.
The husband has not shown that the separation agreement upon which his wife is suing is contrary to public policy, has not shown that the agreement was “ the procuring cause of the divorce (Matter of Rhinelander, 290 N. Y. 31; Butler v. Marcus, 264 N. Y. 519; Yates v. Yates, 183 Misc. 934; Abeles v. Abeles, 197 Misc. 913.) There has been in fact no divorce, and the most that can be said for the husband is that the parties considered divorce, and felt that a formal dissolution of the marriage might be best. And what was done was simply to arrange finances and property and provide for weekly payments, divorce or no divorce. The husband did not agree to make weekly payments in consideration of the wife’s obtaining a divorce and only if she did obtain one. Nor did the agreement have a direct tendency toward dissolving the marriage for according to the husband himself, there was no stipulation as to when there would be a divorce ’ ’ and ‘‘ nothing was said about what I was to do if I were to be sued for divorce * * *. I wanted her to go there [St. Louis] and get it. That was uppermost in my mind * * *. Nothing was said about when she was to apply for a divorce.” At this point in the testimony he added “ I have nothing more to say.” Only later, after the wife had testified that a provision looking toward a divorce had not been discussed for a year before the agreement was signed and that there was no discussion of divorce on the date of the agreement, did he say that ‘‘ there would have been no separation agreement if she hadn’t agreed to go to St. Louis and get a divorce ”. But I cannot accept that as fact.
The provision I have referred to is clause 7 in the separation agreement. “ 7. The cash account of the parties is to be divided equally between them and the share due the wife shall be held in Escrow by Attorney Harold E. Cable, to be turned over to her as soon as she procures her final decree of divorce. The share due the husband shall be turned over to him at once, less legal costs, fees and expenses.”
The amount in question was about $8,700. After deducting expenses and fees, the husband received his one half the day the agreement was signed, $838. How that amount was arrived at neither he nor Ms wife was told at the time. The husband *402 received a statement of account several months later which included an item of attorneys ’ fees in St. Louis for divorce proceedings ; the wife apparently at no time received such a statement. It is impossible to say that the husband was procuring a divorce by agreeing to pay his wife $838, to be held in escrow until a divorce was obtained. Basically, what was being done was, as I have said, to arrange for a distribution of assets, very limited in amount, and to provide for weekly payments for support. The withholding of a small sum in comparison with weekly payments of $60 a week can hardly have been the “ procuring cause ” of the agreement; nor can that aspect of the agreement be said to have a “ direct tendency toward dissolving ” the marriage. The husband has failed to make the payments called for for support and there should be judgment in the wife’s favor for $16,200 with interest.