### LEVY v. LEVY.

(Supreme Court, Appellate Division, First Department. March 8, 1912.)

1. HUSBAND AND WIFE (§ 278*)—SEPARATION—AGREEMENT.
    After a separation, a husband and wife may enter into a valid and binding contract for the wife's separate support and maintenance.

    [Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1046–1053; Dec. Dig. § 278;* Contracts, Cent. Dig. §§ 515, 517.]

2. HUSBAND AND WIFE (§ 278*)—SEPARATION—AGREEMENTS.
    An agreement between husband and wife, after separation, looking to the wife's separate support and maintenance, is not conditional because providing that, in the event of a divorce, a provision, should be inserted in the decree allowing the wife alimony at the rate fixed by the contract.

    [Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1046–1053; Dec. Dig. § 278.*]

3. DIVORCE (§ 200*)—ALIMONY—JURISDICTION OF COURT.

An agreement for the separate maintenance of a wife, entered into before divorce, does not oust the court of jurisdiction to award alimony.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 587–590; Dec. Dig. § 200.*]

4. HUSBAND AND WIFE (§ 280*)—ALIMONY—JURISDICTION OF COURT.

An agreement for the separate maintenance of a wife, where made a part of the decree, will be enforced if the defendant is able to pay the amount agreed.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1055; Dec. Dig. § 280.*]

5. DIVORCE (§ 245*)—ALIMONY—AMOUNT OF PAYMENT.

A husband, after divorce, cannot escape the payment of alimony provided for by decree and by a contract for the separate maintenance of a wife by showing that since divorce he has contracted another marriage which is a drain on his financial sources.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 691–695; Dec. Dig. § 245.*]

Appeal from Special Term, New York County.

Action for divorce by Mary Levy against Abraham Levy. From an order modifying the decree by reducing the allowance of alimony fixed therein, plaintiff appeals. Order reversed, and motion denied.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and MILLER, JJ.

John H. McCrahon, for appellant.

Max D. Steuer, for respondent.

MILLER, J. The application resulting in the order appealed from was made on the ground of a change in the financial condition of the parties since the entry of the decree. The matter was referred to a referee, who took testimony and reported in favor of a reduction of alimony to $100 a month; but, upon a motion to confirm the report, the court at Special Term reduced the allowance only to the sum of $150 a month. If the only question in the case were that presented by the evidence relating to the changed financial condition of the parties, we might not be disposed to interfere with the discretion of the Special Term.

After the action for divorce was brought, the parties entered into a written agreement, by which the defendant in terms, "for himself, heirs, executors, administrators and assigns," agreed to pay the plaintiff $300 a month during the term of her natural life, and stipulated that, in case of his prior death, such payments should continue during the term of her natural life so long as she remained unmarried, and should be a charge upon his estate. He also expressly agreed that he would not "in any action or proceedings or in any manner apply for a modification of the terms of this agreement." The plaintiff on her part agreed not to apply in any action or proceedings for an increase of said sum, and she further agreed to execute to the defendant a release of her right of dower in and to real estate owned by him of the value of over $100,000. She testified, and it was not de-

---

nied, that she had executed said release. The agreement also contained this provision:

"Fifth. The party of the second part further consents that in said action there may be inserted in the decree of divorce, in the event of such decree being granted the party of the first part, a provision allowing the party of the first part alimony at the rate of $300 per month; the provision in said decree not to affect the terms of this agreement."

The learned referee was of the opinion that the agreement was void as against public policy, and that it was merely intended as a stipulation in the action and not as an independent agreement. The contract did not recite that the parties were then living separate and apart; but the evidence tends to indicate that they had theretofore separated, and, while the referee appears to have entertained some doubt as to the sufficiency of that evidence, we are unable to find that there was really any serious dispute about it.

[1] There can be no doubt that, after a separation, a husband and and wife can enter into a valid and binding contract for the separate support and maintenance of the wife. Galusha v. Galusha, 116 N. Y. 635, 22 N. E. 1114, 6 L. R. A. 487, 15 Am. St. Rep. 453. The contract in this case was held to be invalid on the authority of Lake v. Lake, 136 App. Div. 47, 119 N. Y. Supp. 686; Id., 194 N. Y. 179, 87 N. E. 87. But in that case the benefit to be derived by the wife was contingent upon the dissolution of the marriage.

[2] In this case the promise to pay the wife $300 a month was unconditional. The provision that, in the event of a decree of divorce, a provision should be inserted allowing the plaintiff alimony at the rate of $300 a month, did not modify the unconditional agreement to pay that sum in any event. Had there been no decree, the contract obligation to pay that sum would have continued; hence it follows, not only that the agreement was not invalid for the reason assigned in the Lake Case, but that it was more than a mere stipulation for use in the action.

[3] Of course, the contract did not have the effect of depriving the court of jurisdiction. The question is whether the court in the exercise of its jurisdiction will ignore a valid contract, fixing the amount which the wife is to have for her support.

[4] It may be granted that the contract obligation cannot be enforced by contempt proceedings, whereas the decree of the court may be. But the answer to that objection, so far as this application is concerned, is to be found in the fact that the defendant is concededly able to pay the amount agreed upon. While the court doubtless has jurisdiction to modify its decree and to leave the parties to the enforcement of their contract rights by action, we do not think the evidence in this case sufficient to justify such action.

[5] Within a few days after the final decree of divorce, the defendant, in disregard, if not in contempt, of it, contracted a second marriage in another state, and he concedes that he makes his present wife a monthly allowance of $500 for household expenses. He can-

not evade the obligation imposed upon him by his contract and the decree of the court by incurring new ones.

The order should be reversed, with $10 costs and disbursements to the plaintiff, and the motion denied, with $10 costs and disbursements on the motion to the plaintiff. All concur.

---

PEOPLE ex rel. NEW YORK CENT. & H. R. R. CO. v. PRIEST et al., State Board of Tax Com'rs (CITY OF NEW YORK, Intervener).

(Supreme Court, Appellate Division, Third Department. March 6, 1912.)

1. TAXATION (§ 144*)—RAILROADS—SPECIAL FRANCHISE.

A street was laid out on the maps of a city as a public street in 1811, but was not opened and worked as a street until 1850, although parts of it had been used for public travel before that time. In the meantime, pursuant to an act of the Legislature, a railroad had been constructed within the bounds of that street as so laid out. Under that act, the railroad was required to and did obtain the consent of the city to the use of the street. Part of the land used by the railroad was owned by the city in fee, subject to the use of the public as a highway, and part by other parties, who conveyed it to the railroad. *Held*, that the right to use the street by the railroad was taxable as a special franchise, notwithstanding it was used by the railroad before it was actually used as a street.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 250, 251, 258½–263; Dec. Dig. § 144.*]

2. RAILROADS (§ 75*)—USE OF STREETS—ESTOPPEL.

A railroad company, after obtaining permission from a city to use a street, cannot attack the validity of the act under which the street was laid out, on the ground that it provided that no compensation should be paid for buildings erected after it was laid out and before it was actually opened for the purpose of showing that the place in question was not a street at the time it constructed its railroad.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 183–191; Dec. Dig. § 75.*]

3. TAXATION (§ 496*)—ASSESSMENT—ATTACK—BURDEN.

The burden is on the party attacking an assessment of a special franchise by the State Board of Tax Commissioners to show that a wrong method was adopted, or a proper method erroneously applied.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 890–910; Dec. Dig. § 496.*]

4. TAXATION (§ 376*)—ASSESSMENT—METHOD OF ASCERTAINING VALUE.

A State Board of Tax Commissioners in assessing special franchises must ascertain the actual value, and, in arriving at this value, are not bound to adopt any particular method.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

Appeals from Special Term, Albany County.