ETHEL M. HAMLIN, Respondent, *v.* GUY E. HAMLIN, Appellant.

Fourth Department, June 29, 1928.

*Mackenzie, Smith, Lewis & Michell* [*Edward H. Lewis* of counsel], for the appellant.

*Oliver D. Burden,* for the respondent.

SAWYER, J. A judgment of the Equity Term of Onondaga county canceling and setting aside a contract heretofore entered into by the parties and modifying a judgment of absolute divorce between them so as to provide for the payment to plaintiff of $100 per month, as permanent alimony, commencing November 1, 1924, was unanimously affirmed in this court, without opinion, March 14, 1928. (223 App. Div. 810.)

Defendant now moves for leave to appeal to the Court of Appeals. The questions presented are new in this State and for this, as well as because of the unusual circumstances involved, we are of the opinion that the motion should be granted.

On or about the 19th day of September, 1919, plaintiff procured from defendant a final decree of divorce, which was entered in the clerk's office of Onondaga county September 20, 1919, in and by which it was provided that defendant should pay to plaintiff, as a suitable allowance for her support, $100 per month during her natural life.

The parties had then lived apart more than four years, during which time defendant had voluntarily paid her the sum of $150 per month. The action was tried before a referee who found defendant guilty of adultery and recommended an absolute divorce in plaintiff's favor with an allowance of $100 per month by way of permanent alimony. After this report was delivered and its contents made known to the parties, they entered into an agreement which recites the finding of the referee and that plaintiff "feels that said sum of one hundred dollars per month is inadequate for her proper support and maintenance" and then provided for the payment to her of $175 per month ($25 of which monthly payment was to be applied by defendant toward the liquidation of a certain store account) until there had been paid to her the sum of $2,600, when, or in event she should have sooner married, all payments should cease, which total sum so paid plaintiff agreed to accept in full satisfaction for her support and maintenance during her natural life and of all alimony awarded or that might thereafter be awarded to her in the action.

After the making of this contract both the interlocutory and the final judgment were upon plaintiff's motion made and entered, each containing the alimony provisions that had been made by the referee and neither referring to the intervening contract made in lieu thereof.

Plaintiff now sues to set aside the contract and to recover her alimony as provided in the divorce judgment, less the $2,600 she has received, and has judgment as hereinbefore stated.

Not having been entered into until after the handing down of the referee's report in the divorce action, there could have been no submission of the agreement to him, and the failure to present same to the court for ratification with the application for judgment, was entirely that of plaintiff, the motions having been made in her behalf on stipulation of the defendant waiving notice thereof. (Inasmuch as no question is made but that the agreement in question supersedes the provision for plaintiff's support contained in the divorce decree, the omission, which seems to have been inadvertent, may be disregarded.) It is well settled that the parties to an action for divorce may adjust between themselves the amount required for the future maintenance of the wife by the husband (*Werner* v. *Werner*, 153 App. Div. 719; *Cain* v. *Cain*, 188 id. 780; *Galusha* v. *Galusha*, 116 N. Y. 635; 138 id. 272), and if fairly made and in good faith by both parties same will be accepted by the courts in lieu of any other provision for her support and the agreement enforced. Such an agreement will, however, be set aside and vacated for fraud or coercion practiced on the wife, in which event the court will amend the decree so as to fix therein such sum for her support as may be equitable, dating from the commencement of the action therefor. (*Galusha* v. *Galusha*, 138 N. Y. 272.) Where the marital status between the parties is continued, the duty of the husband, under section 51 of the Domestic Relations Law, to support his wife is not terminated, and the court will, notwithstanding any such agreement, on proper showing, intervene for the protection of the wife as changing circumstances may require, not limiting itself to cases where fraud or overreaching may have entered into her contract. (*Hungerford* v. *Hungerford*, 161 N. Y. 550; *Winter* v. *Winter*, 191 id. 462; *Tirrell* v. *Tirrell*, 232 id. 224; *Harding* v. *Harding*, 203 App. Div. 721; affd., 236 N. Y. 514.)

Here the court is called upon to determine whether this may be done when the marriage between the parties has been entirely dissolved. The complaint is bare of any allegation of trickery, fraud or coercion practiced on plaintiff by defendant in the procuring of the agreement in question. Both it and the finding of the trial justice proceed upon the theory that because of plaintiff's sick and hysterical condition she was unable to judge wisely and prudently in relation to her affairs and improvidently joined defendant in the execution of the agreement; that same was unfair, inequitable and unjust and did not provide adequately for her support and was wholly disproportionate to defendant's means and income;

that the defendant arbitrarily determined therein the measure of support that he should provide for her; that whatsoever payments she accepted thereunder were unadvisedly and imprudently accepted, and that, by reason of her infirm health and his failure to provide for her, she is in danger of becoming a public charge.

Her testimony that she was at the time of the making of the contract in ill health and in a highly nervous and hysterical condition is not attempted to be denied. Nor is it disputed that that condition continued down to the time of the trial of this action. She was about forty years of age at the time of this divorce and, with her ordinary expectancy of life, it is evident a payment of $2,600 was wholly inadequate provision for her future, particularly when it is considered that she had and has no means of her own and that practically $400 of that amount was to be applied toward the payment of a then existing indebtedness, for which the husband was legally liable.

These facts taken in connection with the waiver by her of the recommendation of the referee that she be paid $100 a month during the remainder of her life, for the reason, as recited in the contract, that same was insufficient for her support, strongly indicate her lack of real understanding of the agreement she entered into. At the time this contract was made and for some months thereafter the parties were husband and wife. (*Kingsbury* v. *Sternberg*, 178 App. Div. 435.)

The obligation for her support so long as she lived rested upon defendant. That obligation was not altered by the fact that because of his wrongdoing their marriage was drawing to its close. He was bound to deal with her in absolute good faith; that he failed in this and ridded himself of his duty to her for a pittance is certain.

Upon presentation of these facts to the court before the entry of the final decree it undoubtedly would have vacated the agreement and directed the making of a proper provision for her. There would seem to be no reason why that may not still be done. The interest of the public as well as of the parties is involved and public policy requires that such contracts be not only free from taint of actual fraud or coercion but also fair and reasonably sufficient having regard to the station in life and circumstances of the parties. So far as we are aware there is no precedent for this conclusion. Plaintiff, ignoring the distinction between divorces *a mensa* and *a vinculo*, submits the line of cases like *Tirrell* v. *Tirrell* (*supra*) as authority. Defendant urges the distinction and rests upon his inference from *Galusha* v. *Galusha* (138 N. Y. 272) that after the marriage is dissolved nothing other than fraud or

coercion will warrant interference by the court. Neither cites any authority precisely in point. 'The general policy of the law in such matters is pointed out in sections 1155 and 1170 of the Civil Practice Act, which provide that after provision is made for the wife's support by a final decree of either divorce or separation, jurisdiction to " annul, vary or modify such directions " as circumstances may demand is retained, and it is held that changes in the physical and financial condition of the parties may be considered on application for alteration under these permissive provisions (*Burdick* v. *Burdick*, 183 App. Div. 488; *Parker* v. *Parker*, 189 id. 603), and that in a separation action the court will relieve a party from a harsh or unjust stipulation for permanent alimony, even though fully authorized. (*Hallow* v. *Hallow*, 200 App. Div. 642.)

Having in view these general principles and that contracts of this nature are, in theory, in furtherance of the duty incumbent on a husband to support his wife according to his means and their station in life, we believe there can be no legal obstacle in the way of vacating this agreement on the ground that it is insufficient and unconscionable and was entered into without actual understanding although the facts were known to plaintiff.

The testimony in support of plaintiff's claim is mostly her own, is quite general in character and somewhat meagre. Nevertheless, standing uncontradicted as it does we think it is sufficient to support the finding.

In the original action plaintiff was represented by counsel by whom much, if not all, the actual negotiation of this contract seems to have been had. Plaintiff's connection therewith and information concerning same was largely obtained from him although she admits having had the contract in her possession, with full opportunity to read and understand it, some considerable time before it was signed. She testified, however, that because of her overwrought condition, mental and physical, she did not realize its full import and relied on various inducing statements made to her in connection with the matter, saying that " they told me " this and " they told me " that. It is evident that in using the word " they " she had reference both to her friends and to the counsel acting for her in the proceedings. On the trial this attorney was called as a witness for defendant and was asked to state any conversation had with plaintiff prior to the signing of the agreement. The reply was excluded on her objection that same was incompetent, privileged and the witness incompetent because of his relationship as her attorney. It is claimed that by testifying in her own behalf plaintiff waived the attorney's privilege and his testimony is com-

petent under the authority of *People* v. *Bloom* (193 N. Y. 1); *Capron* v. *Douglass* (Id. 11); *Hethier* v. *Johns* (233 id. 370). In each of these cases the door was opened for the admission of the physician's testimony by general proof of the physical condition of the patient first introduced in his behalf. Quite likely the same rule of waiver should apply to testimony of an attorney. He cannot, however, testify to communications with his client other than so far as same relate directly or indirectly to matters concerning which the door has been opened. Further than this the bar is not raised. The difficulty with the instant case is that the question was too broad. Plaintiff had testified to statements and impressions gained from her attorney. She had also testified to matters personal to herself, her mental and physical condition, her relations with her husband, her financial situation and needs and in addition, by the reiterated use of the word " they," to statements and impressions gained from others than her counsel. The questions propounded to her attorney were broad enough to involve general conversations concerning any or all those matters, some of which at least could not ordinarily be contradicted in that manner. We are not prepared to say that the cloak of privilege, so far as it relates to attorneys, has, if at all, been raised beyond the point necessary to enable contradiction of the matters and things, responsibility for which is attributed directly to him.

The judgment was sustained by us for these reasons, but in order that the law applicable may be definitely settled and the matter disposed of accordingly, leave to appeal to the Court of Appeals should be granted.

Order may be entered accordingly.

All concur. Present — HUBBS, P. J., CLARK, SEARS, CROUCH and SAWYER, JJ.

Motion for leave to appeal to the Court of Appeals granted.