BERTHA W. KUNKER, Respondent, *v.* EARL F. KUNKER, Appellant.

Third Department, November 19, 1930.

*Arthur B. Lanphier* [*William P. McEniry* of counsel], for the appellant.

*Joseph Besch, Jr.*, for the respondent.

DAVIS, J. The plaintiff brought this action for an absolute divorce on February 25, 1929. An interlocutory judgment (to become final) was entered on the following April ninth. The defendant has now moved at Special Term to modify that judgment in respect to the amount of alimony and his right to visit the children.

For the apparent purpose of adjusting their interests, the parties entered into a written sealed agreement dated March 26, 1929. In brief, the defendant agreed to make monthly payments to plaintiff during her lifetime, which the latter agreed to use for her own support and for the support and education of the two children. In addition she was to be paid $500, to receive an automobile and all personal property then in their former home, and to have a month's free occupancy of the residence. The defendant agreed to pay all outstanding obligations and to discharge plaintiff from liability as an indorser on a note. Plaintiff was to have sole custody of the children. She agreed, after the entry of the divorce judgment, to release her dower rights. The defendant agreed to maintain two policies of insurance for $10,000 each on his life, payable to the children respectively as beneficiaries. There was no definite agreement to release defendant from further claims.

The last three paragraphs of the agreement are as follows:

" *Fourth*. It is further agreed that in case of the remarriage of the said Bertha W. Kunker or in case of the death of either or both of said children, that the said Earl F. Kunker may apply to the Court for a modification of said monthly payments.

" *Fifth*. It is further agreed that the said Earl F. Kunker shall have the right to see said children once a week if he so desires upon appointment to be made with said Bertha W. Kunker, at such reasonable times and places as she may designate.

" *Sixth*. That both parties hereby consent and agree that this agreement subject to the approval of the Court shall be made a part of the Final Judgment of Divorce to be entered in said action."

The interlocutory judgment, besides dissolving the marriage, awarded the custody of the two children to plaintiff without limitation. It then provided as follows: " Ordered, Adjudged and Decreed, That the defendant pay to the plaintiff at her residence the sums specified in the agreement made between the parties for her support and the support of said issue, and which agreement is attached to the evidence herein and marked Exhibit A  *  *  *. Ordered, Adjudged and Decreed, That the defendant perform each and every other covenant and agreement of said contract on his part made and entered into  *  *  *." There was nothing in the judgment directing plaintiff to perform any covenants, such as

the release of dower rights or the visitation of the children by defendant.

The judgment contains no recitals indicating how the agreement came to the attention of the court or for what purpose it was offered in evidence. The defendant was in default; but the record does not inform us whether he was present at the trial or was represented by counsel. For the purposes of this appeal we must take the judgment as we find it. If it is incorrect in form or did not represent the true result of the trial, any party aggrieved must move to correct it at Special Term. (*Simmons* v. *Craig*, 137 N. Y. 550.)

The motion to modify was denied on the ground that as the contract was made a part of the judgment there was no power to modify it. We take a different view.

The parties, pending the trial of the action, had the right to make an agreement relative to the division of their property and the amount payable by the husband for support. (Dom. Rel. Law, § 51; *Winter* v. *Winter*, 191 N. Y. 462.) Such agreements should contain reciprocal promises. If no such contract had been made, the court on the trial would have determined the sum necessary for her support and included such provision in the judgment. (Civ. Prac. Act, § 1155.) The proper amount would have been determined by taking evidence, or by stipulation if it appeared just. (*Werner* v. *Werner*, 153 App. Div. 719; *Hallow* v. *Hallow*, 200 id. 642.) The plaintiff, then, had a choice of two methods for obtaining support — by agreement, or by judgment. Both had their advantages and disadvantages. The contract method had permanence. No matter what hardships it might later impose upon her husband, there was no power in the court to modify it, even though the agreement contained a clause permitting modification. (*Stoddard* v. *Stoddard*, 227 N. Y. 13; *Johnson* v. *Johnson*, 206 id. 561.) If she was forced into a bad bargain through unconscionable means, or the agreement was ill-advisedly made, it might be rescinded. (*Galusha* v. *Galusha*, 138 N. Y. 272; *Hungerford* v. *Hungerford*, 161 id. 550; *Tirrell* v. *Tirrell*, 232 id. 224; *Hamlin* v. *Hamlin*, 224 App. Div. 168; *Harding* v. *Harding*, 203 id. 721; affd., 236 N. Y. 514.) She could incorporate in such an agreement many terms which the court would have no jurisdiction to grant. (*Wilson* v. *Hinman*, 182 N. Y. 408; *Johns* v. *Johns*, 44 App. Div. 533; affd., 166 N. Y. 613.) The agreement could not be enforced by contempt proceedings (*Levy* v. *Levy*, 149 App. Div. 561), nor by sequestration of property.

On the other hand, if she submitted her claims for support to the court, inquiry would be made into the means and earning capacity of her husband and a sum fixed as a just and adequate

substitute for her support. This could be increased (or decreased) as her needs and the means of her husband changed. (Civ. Prac. Act, §§ 1155, 1170.) Payments might be secured, or enforced by contempt proceedings or sequestration. (Id. §§ 1171, 1172.) If she remarried the judgment must be modified in respect to alimony. (Id. § 1159.)

We may assume that plaintiff and her counsel had in mind these two methods with their relative advantages, when the action was brought. Their position now seems to be that plaintiff has availed herself of both methods — that she had a decree approving her agreement and making it a judgment, which may not be modified because it is still a contract.

In matrimonial actions jurisdiction is entirely statutory. The limits of such jurisdiction are definitely determined. The court may decree the dissolution of the marriage. (Civ. Prac. Act, §§ 1175, 1176.) In so doing it is authorized to provide for the maintenance and support by the husband of his wife and minor children. (Id. § 1170.) There is nothing in the statute giving jurisdiction to incorporate into the judgment formal private agreements made by the parties as to a division of their property and the like. Agreements or stipulations for support and security therefor, including many details, are sometimes included in the judgment if they appear fair, rendering it unnecessary to take proof. So here it was possible for the parties to stipulate that certain provisions in the agreement relative to support should be included in the judgment for whatever advantage that might bring, and otherwise that the agreement should remain in force. A wife need not ask alimony if she has sufficient means of her own, or if she has made a satisfactory contract with her husband. (*Galusha* v. *Galusha*, *supra*, 281.) If a contract is made, the courts will not award a different sum. (*Cain* v. *Cain*, 188 App. Div. 780; *Levy* v. *Levy*, *supra*.) If there is an existing contract there is really no necessity for an application for alimony. There have been cases where such provisions have been incorporated in the judgment — for what purpose is uncertain, unless to give an additional remedy by contempt. But they became a part of a judgment separate from the contract.

Many of the terms of this agreement must have been executed and the contract in that respect ended, before the date of granting judgment. Therefore, there could have been no sound reason for incorporating such parts of the agreement in the judgment and directing the defendant to " perform each and every other covenant and agreement of said contract on his part made and entered into." We think it would have been just as proper procedure for the parties

to agree upon a code of moral conduct which the defendant undertook to observe, and to make that a part of the judgment with a decree requiring him to perform, as to include " Exhibit A " in the judgment with like admonitions. We do not approve this practice. We think it leads to confusion.

There were other matters about which the parties could not finally contract. These were the custody of the children and their proper support and education. Over these the court has jurisdiction regardless of the agreement of the parties, for as to them the directions must be such " as justice requires," subject to later modification. (Civ. Prac. Act, § 1170. See, also, Dom. Rel. Law, § 70, as amd. by Laws of of 1923, chap. 235.)

The last three paragraphs of the contract read together indicate that the parties decided to submit to the court the questions of support and the custody of the children, and the provision relative to modification in case of the remarriage of plaintiff or the death of the children. These, if approved, were to be included in the judgment. With other parts the court had no concern. This indicates that in part the agreement was tentative. It was in these respects a formal stipulation, for it was offered in lieu of evidence. We think it was intended as a stipulation, in view of the fact that the contract had been in part executed; and it was entered into after action was commenced, and provided for its approval by the court. There was no reservation that the contract should endure after it became part of the judgment. If that is the correct view, then the terms of the contract still executory became merged in the judgment. For that matter, whether we view it as a stipulation or as a contract still having some force, there can be no doubt that the court has power to modify its judgment, even though the decree adopted an agreement of the parties. That is the rule in this and other jurisdictions. (*Levy* v. *Levy, supra; Wilson* v. *Caswell,* [Mass.] 172 N. E. 251; *Herrick* v. *Herrick,* 319 Ill. 146; *Skinner* v. *Skinner,* 205 Mich. 243; *Warren* v. *Warren,* 116 Minn. 458.) (See, also, note, 44 Harvard Law Review, 127.) The plaintiff was aware of this power when she asked to have the agreement included in the judgment. The court is not divested of its statutory jurisdiction (Civ. Prac. Act, §§ 1155, 1170) because the judgment was based on a formal agreement rather than a simple stipulation or evidence. If plaintiff thinks that life still remains in the contract, she may seek relief under it in an action at law. We express no opinion concerning her rights in that respect. Having elected to obtain the remedies under a judgment she took the risk of modification. The power to modify in respect to custody of the children, we think is beyond question.

The question was decided below solely as one of law. Whether under the facts presented the judgment should be modified is an entirely different question, resting primarily in the discretion of the court at Special Term.

The order should be reversed on the law, without costs, and the matter remitted to Special Term where the parties may proceed as they are advised.

VAN KIRK, P. J., WHITMYER and HILL, JJ., concur; HASBROUCK, J., concurs in respect to the power of the court to modify the decree as to custody of children, but otherwise dissents.

Order reversed on the law, without costs, and matter remitted to Special Term where the parties may proceed as they are advised.