GERMAINE SCHNITZER (Formerly Known as GERMAINE S. BUERGER), Appellant, *v.* LEO BUERGER, Respondent.

First Department, February 17, 1933.

*Eugene Untermyer* of counsel [*L. Arnold Weissberger* with him on the brief; *Guggenheimer & Untermyer*, attorneys], for the appellant.

*Ben Herzberg* of counsel [*Cook, Nathan & Lehman*, attorneys], for the respondent.

SHERMAN, J. Defendant seeks to modify a final decree of divorce by reducing what is said to be the amount of alimony made payable by defendant by that judgment, lest he later be held in contempt of court for its violation. He asserts such a change in his fortunes as to make it impossible for him to meet the payments which he had contracted to make in an agreement referred to in the final judgment of divorce. This claim of financial distress is denied by

plaintiff. By the order appealed from, the Special Term has referred that dispute to a referee who is to take the evidence and report thereon to the court, and pending such report, the determination of this motion is in abeyance.

During the pendency of this divorce suit, the parties entered into a written agreement which plaintiff urges is a settlement of property disputes. That agreement seems to have been recommended for approval by the official referee who heard the evidence in the divorce suit, and the final judgment, after reciting the agreement, contains the following: " Ordered, adjudged and decreed that the said agreement dated as of December 24th, 1928, be and the same hereby is approved and the parties to this action are ordered and directed to carry such agreement into effect pursuant to the provisions thereof."

Plaintiff contends that the violation by defendant of any part of that agreement, which calls upon him to make a payment of money, would not support an order for punishment as for a contempt of court. If this contention be upheld, obviously no reason exists for the determination by the court of defendant's financial condition, and the motion should meet with summary denial.

The agreement itself, which, as stated, was entered into in advance of judgment, is a lengthy and intricate document, drawn with great minuteness. With the exhibits attached to, and forming part of it, the agreement takes up nearly 100 pages of the printed record. It deals with a variety of matters which it is needless here to recount. Suits had been pending between the parties to determine the ownership of securities held in brokerage accounts and in a safe deposit box. The main purpose of the agreement was to compose these controversies. It provided among other things for the creation of a trust, the appointment of a trustee to hold securities, and to collect and pay over the income, which income was to go to plaintiff and her children. Defendant engaged thereunder to make up the deficiency, if the annual income at any time fell below a stipulated amount, and if it exceeded that sum, defendant became entitled to the excess. The relief here sought is from the requirement that he make up that deficiency, which he claims is commanded by the judgment itself.

While defendant fears that his annual income during the current year of depression will be less than this stipulated sum, it appears that he received the excess of income over the stipulated sum in a year of prosperity.

The agreement also provides for many contingencies, such as defendant's illness or incapacity to pursue his profession, the respective rights thereafter of the parties, how such disability is

to be established, arbitration clauses, engagements that each will refrain from making charges against the other and from taking steps to inquire into the extent of the other's income, and for liquidated damages in case of breach of certain provisions.

Thus, it is apparent that the agreement is not that clear and distinct understanding for the payment of alimony which, if it were approved by the court and its pertinent provisions were extracted and embodied in the judgment, might be enforced by a contempt order. The practice of incorporating into a final divorce judgment such an agreement as this was condemned in *Kunker* v. *Kunker* (230 App. Div. 641) in forceful and unmistakable language. The court (per DAVIS, J.) pointed out that there is nothing in the statute which gives jurisdiction to incorporate into such a judgment the formal private agreements made by the parties as to a division of their property and the like. Its inclusion in the judgment here has accomplished no more than to give rise to a misconception of the real scope of the decree and to consequent unnecessary litigation. The court should not be called upon to separate the agreement into various parts, construe them and determine how much, if any, of the obligations assumed by the defendant should be held to be for alimony and how much for reinstatement of plaintiff in any property rights of which she may have been deprived.

There is no question but that in a proper case where the alimony has been explicitly fixed, even though by means of an appropriate agreement approved by the court and embodied in the judgment, the court may alter the amount to a sum which it deems fair to require a defendant to pay toward the support of his wife and children. The power intrusted to the courts by sections 1155 and 1170 of the Civil Practice Act exists none the less where such a direction follows the agreement between the parties. (*Kunker* v. *Kunker, supra; Holahan* v. *Holahan,* 234 App. Div. 572; *Lowenthal* v. *Lowenthal,* 229 id. 446; *Goldfish* v. *Goldfish,* 193 id. 686; *Staehr* v. *Staehr,* 237 id. ——.) On the other hand, manifestly, no power resides in the court to alter a valid agreement as between the parties who made it and who may declare upon it for relief as upon any other contract.

The order appealed from should be reversed, with twenty dollars costs and disbursements to appellant, and the defendant's motion denied, with ten dollars costs.

MARTIN, MERRELL, O'MALLEY and TOWNLEY, JJ., concur.

Order reversed, with twenty dollars costs and disbursements, and motion denied, with ten dollars costs.