WILLIAM A. H. HOWLAND v. AMBER JUSTIZ STITZER, Now REMARRIED AND KNOWN AS MRS. SHERMAN HAWES, JR., AND FIRST NATIONAL BANK & TRUST COMPANY IN ASHEVILLE, NORTH CAROLINA, A CORPORATION.

(Filed 8 October, 1952.)

**1. Divorce and Alimony § 16: Husband and Wife § 12d—**

Where the provisions in a divorce decree for the support of a wife, in accordance with a prior valid deed of separation executed by the parties, is stricken out by the court originally rendering such decree without prejudice to the rights of the parties under the agreement, the provisions for the support of the wife may no longer be enforced by contempt proceedings, but the separation agreement stands without power in the courts to modify it in the absence of fraud or duress.

**2. Husband and Wife § 12d—**

A contract between husband and wife to separate in the future is void, but an agreement executed after separation which does not release the husband from his obligation to support his wife is valid in this State and under the laws of the State of New York, and binds the husband to contribute the sums therein provided for the future support of his wife.

**3. Same—**

A separation agreement executed by husband and wife after separation and pending her divorce action is not subject to attack under the laws of the State of New York for fraud and collusion on the ground that its real consideration was that the wife would proceed with the divorce action without delay and that the husband would not defend it, there being no attack of the ground on which the divorce was granted or contention that the decree was not justified by the real facts, since in such instance no

HOWLAND v. STITZER.

fraud is perpetrated on the court in obtaining the decree, nor is the agreement contrary to public policy.

**4. Same—**

> While decree of absolute divorce terminates the right to alimony under a prior decree, it does not affect the valid provisions of a separation agreement voluntarily executed by the parties prior to the decree of divorce, and the obligation of the husband to pay certain sums monthly to the wife for the balance of her life regardless of her marital status remains binding even after her subsequent remarriage, nor is such provision contrary to public policy.

**5. Same—**

> Where, after decree of absolute divorce, the husband recognized the validity of a separation agreement executed by them prior to the divorce decree by continuing to pay her for more than two and one-half years the amounts stipulated therein even after her remarriage, *held* the husband by ratifying and confirming the agreement is estopped from attacking it.

**6. Pleadings § 31—**

> The wife's motion to strike allegations in her husband's reply attacking the validity of a separation agreement entered into by the parties should have been allowed under the facts of this case, it appearing that the agreement was not subject to attack on the grounds alleged and that the husband was estopped from attacking it by his ratification and confirmation of the agreement, leaving for adjudication the respective rights of the parties under the terms of the agreement.

APPEAL by defendant Hawes from *Gwyn, J.,* July Term, 1952, of BUNCOMBE.

Civil action to determine whether the plaintiff is entitled to receive certain funds now held by the corporate defendant, as trustee, pursuant to an agreement entered into by and between the plaintiff herein and the corporate defendant on 30 October, 1940, which funds were assigned to the defendant Hawes in a separation agreement entered into by and between the plaintiff and the individual defendant, his former wife, now Mrs. Hawes, on 2 April, 1947.

The plaintiff and the individual defendant herein were married on 6 January, 1941. They lived together as husband and wife until sometime in 1946 when they separated. At the time of their separation, they were citizens and residents of the State of New York; and on 18 September, 1946, Amber Howland, as the party of the first part, and her husband, the plaintiff herein, as party of the second part, entered into a separation agreement in said State. This agreement contained these pertinent facts: (1) That the parties had separated and were living apart from each other; (2) that they were desirous of avoiding the unpleasantness of litigation, and were desirous of entering into an agreement pursuant to which they might continue to live separate and apart permanently; (3) that the

parties had agreed upon a reasonable provision for the support and main-tenance of the party of the first part for her natural life, and in consid-eration of the foregoing recitals and the mutual covenants, contracts, and agreements therein contained, it was mutually agreed by and between the parties thereafter to live separate and apart from each other for the rest of their natural lives; (4) that the party of the second part agreed that during the lifetime of the party of the first part or until her remarriage, and during his lifetime, he would pay to the party of the first part $4,200.00 annually, in equal monthly installments of $350.00, payable in advance on the first day of every month; (5) that the principal and pro-ceeds of the trust referred to above would be collateral security for the faithful performance of the provisions of the agreement; (6) that the party of the first part would contract no debts in the name of her husband or in any way bind him for any debt or debts; (7) that the party of the second part would cause a policy of life insurance to be issued on his life in the amount of $25,000.00, making the party of the first part the irre-vocable beneficiary thereunder, and he would pay the annual premiums thereon during his life or until such time, prior to his death, when the policy should become paid up; (8) that a certain house and lot in Nassau County, State of New York, should continue to be the property of the party of the first part; (9) that the apartment, and furnishings contained therein, located at 1060 Park Avenue, New York City, was and should continue to be the property of the party of the first part; (10) that the provisions contained in the agreement should remain in full force and effect notwithstanding any action of any nature whatsoever taken by either party in the courts of that State, any other State, or any other Country, and should only be terminated by the happening of any one of the following events: "(a) the death of the party of the first part; (b) the death of the party of the second part; (c) the remarriage of the party of the first part"; (11) that each party would execute, and deliver, any and all such further assurances, things and documents as the other said party should reasonably require, for the purpose of giving full force and effect to the agreement.

Thereafter, on 10 February, 1947, Mrs. Amber Howland, now Mrs. Hawes, instituted an action for absolute divorce against her husband, the plaintiff herein, in the State of New York, on the ground of adultery, and obtained service on him on 13 February, 1947. While this action was pending, to wit: on 2 April, 1947, the parties entered into another sepa-ration agreement, reciting the purposes therefor to be the same as those recited in the original agreement, and in consideration of the cancellation, abrogation and abandonment of the former agreement, and in further consideration of the mutual covenants, contracts and agreements therein contained, it was mutually agreed that in lieu of the payment of $4,200.00

per year to Mrs. Howland, and the transfer to her of the apartment and its furnishings, located at 1060 Park Avenue, New York City, and other provisions for her benefit for life or until her remarriage, she was to receive the income for life from four shares of the common stock of the Providence Journal Company, of Providence, Rhode Island, which stock constituted a part of the principal of the trust held by the corporate defendant; ". . . provided, however, that if the gross annual income of the party of the second part shall be less than the sum of $7,500.00, then for such time and periods as the gross annual income of the party of the second part shall be less than $7,500.00, the party of the first part shall receive no more than 20% (⅕) of the gross annual income of the party of the second part for such time and periods, and the party of the first part shall repay to the party of the second part the excess between the amount she shall receive in income from the four (4) shares of stock hereinabove referred to and the amount of 20% (⅕) of the gross annual income of the party of the second part, whatever that sum shall be." This agreement provides that the income from this stock shall be paid to the individual defendant herein during her lifetime irrespective of her marital status, and the plaintiff herein so notified the corporate defendant and instructed it to transmit these dividends to his wife, Amber Howland, in accordance with the terms of the agreement.

On 11 July, 1947, the New York Court entered an interlocutory decree to become the final judgment after the expiration of three months, unless for sufficient cause the Court in the meantime should direct otherwise. This decree became final and the plaintiff was given the right to remarry, but the defendant was denied that right without the express permission of the Court. The decree further provided, "that the defendant shall provide for the support and maintenance of the plaintiff during the entire period of her lifetime in accordance with the terms of an agreement between the parties dated the 2nd day of April 1947, which said agreement is incorporated in this judgment."

The plaintiff in this action remarried immediately after 16 October, 1947, the effective date of the above decree. Mrs. Amber Howland later married Charles Stitzer, Jr. This latter marriage resulted in divorce and the former Mrs. Amber Howland is now the wife of Sherman Hawes, Jr.

After the entry of the above decree, the proceeds from the stock referred to above were paid to the former Mrs. Amber Howland from 1 May, 1947, until 5 December, 1949, at which time an action was instituted against these defendants by the plaintiff in the Superior Court of Buncombe County, North Carolina, to restrain the corporate defendant from making any further payments of said dividends to the former Mrs. Amber Howland, who was then Mrs. Charles Stitzer, Jr.; and for the purpose of having the court modify the New York judgment to the extent of relieving the

plaintiff from being required to provide for the support of his former wife as provided in the New York decree. It was alleged in the complaint that he was entitled to such relief since his former wife, Amber Howland, had remarried. On appeal to this Court from a judgment overruling a demurrer interposed by the defendant, Mrs. Amber Justiz Stitzer, it was held that the Superior Court of Buncombe County had no power to modify the New York decree, and reversed the judgment of the lower court. See *Howland v. Stitzer,* 231 N.C. 528, 58 S.E. 2d 104.

After the decision in the above case was rendered, the plaintiff herein made a motion in the cause in the original divorce proceeding in the State of New York, on 23 June, 1950, requesting that the provision for alimony contained in the decree be eliminated on the ground that the plaintiff therein had remarried. The motion was allowed pursuant to the provisions of Section 1172c of the Civil Practice Act of the State of New York. The New York Court in its decree, entered 1 May, 1951, modifying the original judgment, expressly provided, however, that such modification should be without prejudice to such rights as the plaintiff may have pursuant to the terms of the agreement entered into between the parties dated 2 April, 1947.

The plaintiff herein, who was the defendant in the New York proceeding, instituted this action on 24 January, 1952, alleging that by reason of the modification of the New York divorce decree, with respect to alimony, he is relieved of any obligation to support his former wife, the present Mrs. Hawes, and is, therefore, entitled to have the First National Bank & Trust Company, as trustee, the corporate defendant herein, enjoined from making any further payments to the defendant Mrs. Hawes; that he is further entitled to a decree adjudging that he is the beneficial owner of the four shares of stock referred to herein, free from any claim of the defendant Mrs. Hawes; and to a decree directing said trustee to pay to him the accumulated dividends from said stock which the trustee has held since 5 December, 1949, as well as the future income therefrom.

The defendant Hawes, in her answer, admits that the New York Court has modified the original decree in the respects alleged, but she sets up in her further answer and defense the provisions of the separation agreement entered into by and between her and her former husband, the plaintiff herein, dated 2 April, 1947, and alleges she is entitled to the benefits provided thereunder irrespective of the modification of the New York decree.

The plaintiff in his reply to the further answer and defense of Mrs. Hawes, alleges that the paper writing dated 2 April, 1947, was entered into between the plaintiff and the defendant on the promise of the defendant to proceed promptly to obtain an absolute divorce from the plaintiff, and the promise of the plaintiff to the defendant Hawes not to defend said

divorce action; that the agreement was executed in furtherance of a scheme entered into by the parties to obtain a divorce and to promote the dissolution of the marriage relationship between the parties; that it did not state the real considerations moving between the parties and is void and of no force and effect, being in violation of the statutes of the State of New York, to wit: Domestic Relations Law, Section 51, as follows: ". . . a husband and wife cannot contract to alter or dissolve the marriage or to relieve the husband from his liability to support his wife." It is further alleged, that said agreement being invalid and unenforceable did not constitute an assignment of the income from the stock to the defendant herein, as set forth in the agreement, and that the agreement is violative of the public policy of the State of New York and of the State of North Carolina.

The defendant Hawes in apt time moved to strike from the plaintiff's reply all allegations which attack the validity of the contract on the ground of collusion, for the reason that if said allegations were true, which is denied, the plaintiff has ratified the provisions of the separation agreement by his conduct subsequent to the execution of the same. The motion was denied and the defendant Hawes appeals to the Supreme Court, assigning error.

*William J. Cocke and C. N. Malone for plaintiff, appellee.*
*David H. Armstrong for defendant, appellant, Hawes.*

DENNY, J.   In the State of New York, where an action for divorce is brought by a husband or wife, and the final judgment of divorce has been rendered in favor of the wife, the Court upon application of the husband on notice, and proof of the remarriage of the wife, must modify such judgment and any orders made with respect thereto by annulling the provisions of such final judgment or orders, or of both, directing payments of money for the support of the wife. Thompson's Laws of New York, Civil Practice Act, Section 1172c; *Dumproff v. Dumproff,* 138 Misc. 298, 244 N.Y.S. 597; *Kirkbride v. Van Note,* 275 N.Y. 244, 9 N.E. 2d 852.

The New York divorce decree, dissolving the marriage between the plaintiff and the defendant, Mrs. Hawes, which decree directed the defendant therein to support his wife, Mrs. Amber Howland, the plaintiff therein, during the entire period of her lifetime in accordance with the terms of the agreement between the parties dated 2 April, 1947, having been modified as authorized and provided in the above statute, the parties involved are relegated to their contractual rights under the agreement. *Goldman v. Goldman,* 282 N.Y. 296, 26 N.E. 2d 265; *Severance v. Severance,* 260 N.Y. 432, 183 N.E. 909; *Goldfish v. Goldfish,* 193 App. Div.

686, 184 N.Y.S. 512. This simply means that although the agreement may constitute a valid and enforceable contract, the provisions therein can no longer be enforced by a contempt order. *Goldman v. Goldman, supra; Levy v. Levy,* 149 App. Div. 561, 133 N.Y.S. 1084; *Kunker v. Kunker,* 230 App. Div. 641, 246 N.Y.S. 118; *Stanley v. Stanley,* 226 N.C. 129, 37 S.E. 2d 118.

A contract between husband and wife to separate in the future is void, but it is too well settled, in this country, to admit of discussion, that after a separation has taken place a valid contract may be made, which will bind the husband to contribute the sums therein provided for the future support of his wife. *Galusha v. Galusha,* 116 N.Y. 635, 22 N.E. 1114; *Kunker v. Kunker, supra; Schnitzer v. Buerger,* 237 App. Div. 622, 262 N.Y.S. 385; *Winter v. Winter,* 191 N.Y. 462, 84 N.E. 382, 16 L.R.A. (N.S.) 710; *Archbell v. Archbell,* 158 N.C. 408, 74 S.E. 327, Ann. Cas. 1913D.

Where parties to a separation agreement have the legal capacity to contract and the subject matter involved is lawful, and the provisions contained therein are just and equitable, and it has been properly and voluntarily executed, in the absence of fraud or duress, the courts are without power to modify it. *Galusha v. Galusha, supra; Goldman v. Goldman, supra; Kunker v. Kunker, supra.*

In the last cited case it was pointed out that the wife had the choice of two methods for obtaining support—by agreement or by judgment. The Court said: "Both had their advantages and disadvantages. The contract method had permanence. No matter what hardships it might later impose upon her husband, there was no power in the court to modify it . . . The agreement could not be enforced by contempt proceedings nor by sequestration of property. On the other hand, if she submitted her claims for support to the court, inquiry would be made into the means and earning capacity of her husband and a sum fixed as a just and adequate substitute for her support. . . . Payments might be secured or enforced by contempt proceedings or sequestration. . . . If she remarried, the judgment must be modified in respect to alimony." Civil Practice Act, Section 1159 (now Section 1172c).

The New York courts recognize the validity of separation agreements made during marriage, so long as they are not agreements to separate or to release the husband from his obligation to support his wife. *In re Rhinelander's Estate,* 290 N.Y. 31, 47 N.E. 2d 681; *Winter v. Winter, supra; Clark v. Fosdick,* 118 N.Y. 7, 22 N.E. 1111; *Galusha v. Galusha, supra.*

The sole remaining question for determination on this appeal is whether the plaintiff, in view of the facts and circumstances disclosed by the record, is entitled to allege collusion as a defense to the individual

defendant's rights under the separation agreement entered into 2 April, 1947.

The plaintiff in this action insists that the above agreement was entered into by and between the parties as a scheme to obtain a divorce in violation of Section 51 of the Domestic Relations Law of the State of New York. In his brief, however, he states "that he had previously entered into an agreement on September 18, 1946 which prescribed that he should pay $350.00 per month which was very onerous, and which was terminable on her remarriage; that thereafter she had threatened never to remarry; that the agreement had been entered into without knowing his rights and without impartial counsel; and that the agreement of April 2, 1947 was entered into pursuant to an agreement that she should give him a divorce, institute an action and that he would not defend the same."

It is well to note, in this connection, that the action against the plaintiff for divorce had been pending for nearly two months before the second separation agreement was entered into. The plaintiff is very careful not to deny the truth of the allegations or the evidence in support of his adulterous conduct, the ground on which the divorce was granted. He insists that the divorce was properly and legally granted; that the collusion affected only the separation agreement. Or to put it another way, he contends there was no imposition of fraud on the court that could possibly affect the validity of the divorce granted, but that the separation agreement was collusive and should be so held, thus releasing him of all obligations under it. It appears that the moving consideration on his part in making the provision for the support of his wife for life, regardless of her marital status, rather than for life or until her remarriage, was (1) to get out from under the onerous payment to her of $350.00 per month, and (2) to assure him that she would proceed with the pending divorce action without undue delay. He was anxious to be divorced so that he could remarry. He now insists upon the validity of everything that was done in so far as it inures to his benefit or has any bearing on the validity of the divorce decree, but demands the right to repudiate every provision that imposes any burden or obligation on him.

In discussing separation agreements in 17 Am. Jur., Divorce and Separation, Section 499, page 408, *et seq.,* it is said: "The validity of such agreements depends on whether there is an attempt to obtain a divorce not justified by the real facts and thus to practice a fraud on the court. An agreement between the parties, not involving an imposition on the court or a suppression of facts, but intended merely to facilitate the proofs and smooth the asperities of the litigation, is valid . . . Under this rule, where a separation has been induced by the vicious conduct or disability of one of the parties, without inducement or fault of the other, a contract looking to a settlement of property rights and the proper maintenance of

the one not in fault is in no sense repugnant to public policy. The amount which the husband is to pay the wife, the terms of the payment, and the length of time during which such payment is to continue may all be arranged between them by consent. In other words, agreements made upon the separation of husband and wife whereby a division of the property or a provision for the support of the wife is made and the husband is released from obligation to support, otherwise than as provided for in such contracts, are, as a rule, considered to be valid, provided they are properly executed. Such agreements violate no rule of public policy, . . ."

The above statement of the law is consonant with the decisions on the subject in the State of New York. *In re Rhinelander's Estate, supra; Graham v. Hunter,* 266 App. Div.. 576, 42 N.Y.S. 2d 717; *Goldman v. Goldman, supra; Butler v. Marcus,* 264 N.Y. 519, 191 N.E. 544; *West v. Burke,* 165 App. Div. 667, 151 N.Y.S. 329, affirmed 219 N.Y. 7, 113 N.E. 561; *Hamlin v. Hamlin,* 224 App. Div. 168, 230 N.Y.S. 51.

In the case of *Butler v. Marcus, supra,* the husband and wife, while living apart, made an agreement whereby the wife was to be paid a monthly sum for one year, the payments to stop at the end of the year if the parties were still married; but if before the end of that year either party should obtain a divorce, then the payments should continue. The wife obtained a divorce before the end of the critical year. In a suit brought by the wife to enforce the agreement against her former husband, the defense was interposed that the agreement was void as against public policy and in violation of Section 51 of the Domestic Relations Law. The Court granted a motion to strike the defense as insufficient in law and entered a summary judgment in favor of the plaintiff. The ruling was affirmed on appeal, and later cited with approval in *In re Rhinelander's Estate, supra.* Cf. *Hoyt v. Hoyt,* 265 App. Div. 223, 38 N.Y.S. 2d 312.

In *Graham v. Hunter, supra,* the defendant attacked the validity of the separation agreement, asserting it to be illegal and unenforceable in the courts of New York in that it was a contract to dissolve the marriage. This claim was based upon a provision of the agreement, dated 7 December, 1932, which conditioned the payments to the wife for her maintenance and support upon her personal submission to the jurisdiction of any court of competent jurisdiction in any action for a divorce which might thereafter be commenced by the defendant. It also provided that the plaintiff would not be entitled to any payments thereunder if she did anything "which might have any material tendency to delay or hinder the filing and entry of a decree or judgment of divorce," by any such court of competent jurisdiction. The parties involved were divorced in the State of Nevada, and while the New York Court held that it could not modify the decree; it did say, in discussing agreements which have a

direct tendency toward dissolving marriages: "We do not believe that the provision in the agreement of December 7th necessarily comes within such condemnation."

Certainly the separation agreement entered into by the plaintiff and the individual defendant on 2 April, 1947, contains nothing violative of Section 51 of the Domestic Relations Act of the State of New York. And it is clear from the record and the plaintiff's statements in his brief, that he was the movant in bringing about the abrogation and cancellation of the former separation agreement which was not satisfactory to him, and the procurement of the execution of the agreement he now seeks to attack. The income from the four shares of stock assigned to his former wife ordinarily amounts to about $1,600.00 annually. He stood by and never attacked the agreement in the divorce proceedings (*Hoyt v. Hoyt, supra*), nor until after the income therefrom had been paid to his former wife for more than 2½ years. He recognized the validity of the contract until his former wife remarried. Under the terms of the agreement she is to receive the income from the above stock for life, regardless of her marital status. Her remarriage had nothing whatever to do with the validity or invalidity of the agreement. *Graham v. Hunter, supra.* Having by his conduct ratified and confirmed the agreement, we hold that he is now estopped from attacking it. He that seeks relief in a court of equity should enter the chancery with clean hands.

The parties are entitled to have the court consider the instruments involved as they are written and to adjudicate their respective rights thereunder. But the motion to strike from the plaintiff's reply all the allegations which attack the validity of the separation agreement entered 2 April, 1947, should have been granted, and the ruling to the contrary is Reversed.